UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GUILD MORTGAGE CO. LLC,

        Plaintiff,

   v.

CROSSCOUNTRY MORTGAGE LLC,

        Defendant.

Case No. C21-1376-JCC-MLP

REPORT AND RECOMMENDATION

This matter is before the Court on Defendant CrossCountry Mortgage LLC's ("CrossCountry") Motion to Stay District Court Proceedings Pending Resolution of Arbitration in *Guild Mortgage Company LLC v. Flowers et al.* (Mot. (dkt. # 23).) Plaintiff Guild Mortgage Company LLC ("Guild") filed a response (Resp. (dkt. # 25)), and CrossCountry filed a reply (Reply (dkt. # 31). No party requested oral argument. In support of its opposition, Guild also submitted a request (dkt. # 27) for judicial notice of two state court records (dkt. # 26).[1] The Court GRANTS Guild's motion for judicial notice (dkt. # 27).

---

[1] "[U]nder Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record'" that are not subject to reasonable dispute. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)). CrossCountry submitted no opposition to Guild's request. The Court therefore takes judicial notice of the court records submitted by Guild.

REPORT AND RECOMMENDATION - 1

Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends CrossCountry's motion be DENIED.

## I.  BACKGROUND

In the instant suit, Guild alleges CrossCountry, "a competing mortgage lender," conspired with three Guild employees (the "Individual Employees") to persuade other Guild employees to "misappropriate nearly all of Guild's Kirkland, Washington branch, including dozens of employees [and] massive amounts of confidential business and client information[,]" and to divert loans in process at Guild to be closed at CrossCountry instead. (Compl. (dkt. # 1) at 1-2.) Guild seeks injunctive relief as well as damages. (*Id.* at 33-34.)

Based on arbitration clauses in the Individual Employees' contracts, Guild filed arbitration proceedings against them in August 2021. (Mot. at 2.) These proceedings are "not set to be heard until October 3, 2022[.]" (Resp. at 2; *see* Schwartz Decl. (dkt. # 26) at 2.) Guild filed the instant action against CrossCountry on October 8, 2021. (Compl.) On October 18, 2021, Guild obtained a preliminary injunction in state court prohibiting the Individual Employees from using, disclosing, or transmitting Guild's confidential information and requiring them and their "new employer" to return the information. (Schwartz Decl., Ex. A (dkt. # 26-1) at 3.)

## II.  LEGAL STANDARDS

Both parties acknowledge Guild's claims against CrossCountry are not arbitrable. Under some circumstances, however, "it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20 n.23 (1983); *see Landis v. North American Co.*, 299 U.S. 248, 254 (1936) ("the power to stay proceedings is incidental to the power inherent in every court to

control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). The party seeking "a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to [someone] else." *Landis*, 299 U.S. at 255.

In determining whether to impose a stay, the Court must weigh "competing interests [including] the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). "A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979).

### III.    ANALYSIS

#### A.    Prejudice to CrossCountry and Judicial Economy

CrossCountry does not contend that it faces any hardship or inequity in being required to go forward but contends a stay will promote judicial economy. (Mot. at 6.) As the Supreme Court has acknowledged, however, enforcing arbitration agreements sometimes hinders judicial economy. The Supreme Court has held that the law "require[es] enforcement of an arbitration agreement, even though the arbitration would result in bifurcated proceedings. That misfortune . . . 'occurs because the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement[.]'" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (quoting *Moses H. Cone*, 460 US at 20).

Here, CrossCountry contends a stay is proper because the arbitration proceedings will consider substantially similar issues. (Mot. at 6 (citing *Bischoff v. DirecTV, Inc.*, 180 F.Supp.2d 1097, 1114 (C.D. Cal. 2002)).) In *Bischoff*, a putative class action where some plaintiffs were subject to arbitration clauses and others were not, all plaintiffs were identically situated and the factual issues would be identical in the arbitration and the litigation. 108 F.Supp.2d at 1114. Here, however, CrossCountry is not identically situated to the three Individual Employees involved in the related arbitration proceedings.[2]

CrossCountry argues a stay would serve judicial economy and avoid the risk of inconsistent decisions because all of Guild's claims "require that Guild prove, as a condition precedent, that the Individual Employees violated their contractual or legal obligations to Guild." (Mot. at 7.) Guild's claims against CrossCountry, however, rely on the actions of not only the three Individual Employees but on "dozens" of other employees Guild alleges CrossCountry "misappropriated" as well as CrossCountry's own actions. (Compl. at 1-2; *see also id.* at 13 ("other Guild employees took efforts to convert, export, and appropriate a substantial amount of Guild information, data, and other property").) Guild specifies at least six other employees who, it alleges, wrongfully provided its confidential data to CrossCountry. (Resp. at 3-4; Compl. at 16-17.) Accordingly, while an arbitration award against the Individual Employees would strengthen Guild's claims before this Court, it is less clear that an award in their favor would aid CrossCountry's defenses.

---

[2] CrossCountry also cites several patent cases, which have a different standard for granting a stay. "There is a 'liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings.'" *Coho Licensing LLC v. Glam Media*, 2014 WL 4681699, at *1 (N.D. Cal. Sept. 17, 2014) (quoting *ASCII Corp. v. STD Ent'mt*, 844 F.Supp.1378, 1381 (N.D. Cal. 1994)). These cases offer the Court little guidance.

REPORT AND RECOMMENDATION - 4

This situation contrasts with *Morales v. Lexxiom, Inc.*, cited by CrossCountry. (Mot. at 6-7 (citing 2010 WL 11507515 (C.D. Cal. Jan. 29, 2010)).) There, the "crux" of an alleged RICO enterprise "involve[d] the wrongful conduct by" defendants who were subject to arbitration. 2010 WL 11507515 at *13. All claims in plaintiffs' lawsuit "depend[ed] entirely on the viability of" claims against these defendants. *Id*. Here, however, Guild's claims involve conduct by people who are not parties to the arbitration. For example, Guild alleges "CrossCountry intentionally induced" not only the three Individual Employees but also:

> [O]ther employees at the Kirkland Branch to breach the loyalty and confidentiality provisions of their respective employment contracts by, among other things, inducing them to transfer Guild's confidential information to CrossCountry, to divert Guild's clients to CrossCountry, and to act as an agent of CrossCountry during their ongoing employment with Guild.

(Compl. at 29.) Accordingly, Guild may still have viable claims before this Court even if it loses in arbitration proceedings.

CrossCountry contends collateral estoppel "may apply" to an arbitrator's findings. (Mot. at 11.) However, even where the parties are identical, "it is far from certain that arbitration proceedings will have any preclusive effect on the litigation of nonarbitrable federal claims." *Dean Witter Reynolds*, 470 U.S. at 222. It is even less certain here, where CrossCountry is not a party to the arbitration and Guild has alleged wrongful actions by people other than the Individual Employees. Under these circumstances, considerations of judicial economy do not weigh heavily in favor of staying this litigation for at least ten months while arbitration proceeds.

**B.     Prejudice to Guild**

In contrast to CrossCountry's failure to assert any prejudice if this action is allowed to proceed, Guild contends it would be harmed by a stay because it seeks injunctive relief against,

and discovery from, CrossCountry that is not available in arbitration, and because ten months is an unreasonable delay. (Resp. at 7-8.)

### 1. Relief Available

In a case Guild cites, where the plaintiff sought injunctive relief based on claims that proprietary information had been disclosed improperly, the court denied the defendant's motion for a stay pending the outcome of arbitration against another company because "the interests that [plaintiff] seeks to protect in this suit can only be protected here, and cannot be protected in the arbitration, even if that proceeding is resolved entirely in [plaintiff's] favor." *Asahi Glass Co., Ltd. v. Toledo Eng'g Co., Inc.*, 262 F.Supp.2d 839, 845 (N.D. Ohio 2003). Similarly, here, Guild cannot obtain injunctive relief against CrossCountry in the arbitration proceedings. CrossCountry argues *Asahi* is distinguishable because "the plaintiff sought expedited discovery before the motion to stay was filed" but fails to explain how this distinction is relevant here. (Mot. at 6.) Guild also asserts prejudice based on discovery needs (Resp. at 8), and the lack of an *expedited* discovery motion is not dispositive. CrossCountry also argues Guild has already received injunctive relief and has not explained how an injunction against CrossCountry will provide further relief. (Reply at 6.) CrossCountry entirely ignores the alleged wrongful actions by employees other than the three Individual Employees, all of which were allegedly induced by CrossCountry. The Court cannot assume, at this juncture, that Guild would achieve no further relief from an injunction imposed directly on CrossCountry. Moreover, a plaintiff is "entitled to pursue each wrongdoer separately until it receives full satisfaction[.]" *RMF Nooter, Inc. v. Gleeson Constructors, LLC*, 2006 WL 3290126, at *8 (W.D. Mich. Nov. 13, 2006).

CrossCountry also argues *Asahi* is distinguishable because "the defendant did not make a showing of prejudice or a risk of inconsistent rulings," but here CrossCountry has not even

argued prejudice. (Reply at 6.) And, as Guild points out, it would not be inconsistent for the three Individual Employees to be found not liable, yet actions by other employees found to underlie wrongful behavior by CrossCountry. In a case involving similarly situated plaintiffs, some of whom were not subject to arbitration clauses, a court in this circuit denied the defendant's motion to stay because "[t]he parties do not dispute that, regardless of the outcome of the arbitration, the claims of the [non-arbitrating] Plaintiffs will need to be litigated in this court[;] the potential for inconsistent results in this forum is insufficient to overcome such interests." *Congdon v. Uber Techs., Inc.*, 226 F.Supp.3d 983, 991 (N.D. Cal. 2016). The Court finds this reasoning persuasive in the instant case as well.

In short, the need to resolve claims not covered by the arbitration proceedings and the fact that injunctive relief is available only in this forum weigh against granting a stay.

    2.    *Discovery Needs*

CrossCountry argues Guild's "dissatisfaction with the discovery available in its arbitrations" does not create prejudice. (Reply at 1-2.) The issue is not Guild's satisfaction, however, but the subject matter of the arbitration. Because CrossCountry is not a defendant in the arbitration—and neither are the other employees whose actions are at issue—those proceedings will not fully address the discovery needs of this case. Guild's discovery needs weigh against granting a stay.

    3.    *Length of Delay*

Guild contends that over "the next ten-plus months, memories will fade and witnesses may move or change employers, making it more difficult to discover important facts." (Resp. at 8.) CrossCountry argues "ten months is not a particularly significant length of time with respect to memories[.]" (Reply at 4.) Because neither party offers support or authority for the dispute

over memories, the Court cannot weigh this factor. CrossCountry does not dispute, however, that witnesses are likely to become less accessible over time.

CrossCountry argues Guild created the need for a stay because it "chose" to pursue claims in arbitration and in court simultaneously. (Reply at 3.) CrossCountry fails to explain how else Guild could protect its interests. The arbitration clauses require claims against the Individual Employees to be arbitrated, but Guild had no opportunity to form a contract with CrossCountry that could include an arbitration clause.

Guild contends courts disfavor stays lasting more than about six months. (Resp. at 7.) CrossCountry argues six months is not a hard limit. (Reply at 2-3.) While such a lengthy and indefinite stay may be appropriate in certain circumstances, CrossCountry has not shown it is appropriate here, where CrossCountry faces no prejudice in continuing to litigate this case but Guild faces prejudice if a stay is granted, and considerations of judicial economy do not strongly favor granting a stay. *Cf. Knott v. Wexford Health Sources, Inc.*, 2021 WL 826379, at *2 (D. Md. Mar. 4, 2021) (granting indefinite stay where plaintiff filed "four duplicative suits across four different courts").

Weighing the potential harm caused by granting or denying a stay and considerations of judicial economy, the Court concludes a stay pending the outcome of the related arbitration proceedings is not warranted. *See CMAX, Inc.*, 300 F.2d at 268.

### IV.   CONCLUSION

For the foregoing reasons, the Court recommends that CrossCountry's motion to stay (dkt. # 23) be DENIED. The Court also GRANTS Guild's request for judicial notice (dkt. # 27). A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections, if any, may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **February 4, 2022**.

Dated this 14th day of January, 2022.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9