UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GUILD MORTGAGE CO. LLC,<br><br>    Plaintiff,<br><br> v.<br><br>CROSSCOUNTRY MORTGAGE LLC,<br><br>    Defendant. | Case No. C21-1376-JCC-MLP<br><br>ORDER |

This matter is before the Court on Defendant CrossCountry Mortgage LLC's ("CrossCountry") Request for Leave to File Permissive Counterclaim ("Defendant's Motion"). (Def.'s Mot. (dkt. # 40).) Plaintiff Guild Mortgage Company LLC ("Guild") submitted its opposition (Pl.'s Resp. (dkt. # 42)), and CrossCountry filed a reply (Def.'s Reply (dkt. # 43)). Having considered the parties' briefing, the balance of the record, and the governing law, the Court DENIES Defendant's Motion (dkt. # 40).

        **I.  BACKGROUND**

Guild initiated this action on October 8, 2021. (Compl. (dkt. # 1).) Guild alleges that, around July 2021, CrossCountry conspired with three Guild employees to orchestrate a "mass departure of Guild's entire Kirkland Branch" to CrossCountry, misappropriating "massive

ORDER - 1

1   amounts of confidential business and client information with them[.]" (*Id.* at ¶¶ 1-2, 57.) Guild
2   also alleges "CrossCountry has a pattern and practice of improperly raiding its competitor's
3   employees[.]" (*Id.* at ¶ 52.)
4   　　　On November 29, 2021, CrossCountry filed its answer and a motion to stay proceedings
5   pending the outcome of related arbitration proceedings Guild filed against its former employees.
6   (Dkt. ## 22-23.) This Court issued a Report and Recommendation to deny the motion, which was
7   adopted by the Honorable John C. Coughenour on February 14, 2022. (Dkt. ## 35, 39.) On
8   February 25, 2022, CrossCountry filed the instant motion to amend its answer to add permissive
9   counterclaims. (Def.'s Mot.) CrossCountry alleges that, between June 2020 and January 2021,
10  Guild conspired with a CrossCountry employee, Mirajoy Casimiro, in Las Vegas, Nevada,
11  "offer[ing] her a lucrative employment package with Guild to persuade her to take massive
12  amounts of [CrossCountry's] confidential business and client information[.]" (Stone Decl. (dkt.
13  # 41), Ex. A ("Proposed Counterclaim") at ¶¶ 2, 28.) Guild opposes the motion and contends in
14  the alternative that, if the motion is granted, the Court should bifurcate the proceedings to avoid
15  unnecessary jury confusion. (Pl.'s Resp. at 10-11.)

16  **II.   DISCUSSION**

17  　　　Guild contends CrossCountry's counterclaims would hinder judicial economy by
18  increasing the scope of discovery because all relevant events took place in Nevada, necessitating
19  taking depositions in Nevada and requiring Nevada witnesses to travel to Washington for trial.
20  (Pl.'s Resp. at 5.) In addition, Guild contends CrossCountry's counterclaims would introduce
21  jury confusion due to the need to apply multiple states' laws to nominally similar claims. (*Id.* at
22  6.) Specifically, Guild contends its claims for tortious interference with business expectancy and
23  with contractual relationships would be governed by Washington law while CrossCountry's

tortious interference claims would be governed by Nevada law, which has different standards. (*Id.* at 6-8.) In addition, CrossCountry's civil conspiracy claims would rely on proving Ms. Casimiro breached her contractual fiduciary duties, likely under Ohio law. (*Id.* at 8-10.) CrossCountry argues the prejudice to Guild is minimal, and the differences in state law are illusory. (Def.'s Reply at 1, 6.)

"A party may amend its pleading once as a matter of course within . . . 21 days after serving it . . . . In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). The decision to grant leave is within a court's discretion. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) ("We review for abuse of discretion a district court's denial of a motion for leave to amend a complaint.") The court's leave "should be freely given when justice so requires, and generally shall be denied only upon showing of bad faith, undue delay, futility, or undue prejudice to the opposing party." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011) (internal citations and alterations omitted). "Prejudice to the opposing party is the most important factor." *Jackson*, 902 F.2d at 1387. Undue prejudice may be shown when new allegations would "require proof of different facts." *Id*.

The Court concludes granting CrossCountry's motion would cause Guild undue prejudice because CrossCountry's counterclaims are unrelated to the pending action and would thus substantially increase the scope of discovery. CrossCountry's counterclaims do not arise from the same facts and bear no logical or factual relationship to Guild's claims. Although CrossCountry argues it is alleging "substantially similar facts," parallel but unrelated actions by completely different people are not factually related. (*See* Def.'s Mot. at 9.) Adding the proposed

ORDER - 3

counterclaims would substantially increase discovery needs, as there is no factual overlap with Guild's claims.

Moreover, much of the evidence related to the proposed counterclaims appears to be in Nevada, increasing the burden to litigate the claims in Washington. Guild identifies several specific witnesses located in Nevada: "Ms. Casimiro, the customers she allegedly directed away from [CrossCountry], her former co-workers and others who can attest to the circumstances of her departure, the Guild personnel she allegedly collaborated with, and the relevant IT personnel involved in collecting her emails." (Pl.'s Resp. at 5.) CrossCountry acknowledges its counterclaim would require "some depositions in Nevada (or over Zoom, as the case may be)." (Def.'s Reply at 6.) Witnesses would also be required to travel to Washington for trial. CrossCountry argues any prejudice to Guild is minimal because this action is between two companies with headquarters in Ohio and California, and "[m]any of the parties' current employees involved in the recruitment, onboarding, and training of new employees are located in Ohio or California." (*Id*.) CrossCountry fails, however, to identify any specific likely witnesses who are located in Ohio or California.

Moreover, CrossCountry acknowledges it could bring its claims in a separate action in Nevada. (*See* Def.'s Mot. at 9 (CrossCountry notes it "has not run afoul of any statute of limitations that would prevent it from bringing these very claims in federal court in Nevada.").) There is no dispute that venue would be inappropriate in this district, if not for the already existing litigation. This district has no connection to the events that occurred in Nevada or the parties domiciled in other states.

CrossCountry's failure to raise its counterclaims in its November 2021 answer further supports the Court's conclusion. "Although delay is not a dispositive factor in the amendment

ORDER - 4

analysis, it is relevant, especially when no reason is given for the delay." *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (internal citations omitted). "Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson*, 902 F.2d at 1388. The Court recognizes that the proposed counterclaim is offered relatively early in the litigation, with discovery still scheduled to proceed for several more months. (*See* dkt. # 37 (ordering "[d]iscovery to be completed by 9/19/2022").) Nevertheless, CrossCountry provided no reason it waited until February 2022, three months after filing its answer, to allege claims that are based around Ms. Casimiro's departure in January 2021. Although, alone, this factor would not be enough to deny the motion, it supports the Court's conclusion by indicating that the proposed counterclaim is not raised for proper purposes. It may instead be raised, as Guild suggests, to give a jury "the impression that this kind of organized and premeditated theft of information is somehow par for the course in this industry, and that 'everybody does it.'" (Pl.'s Resp. at 11.)

Given the total lack of factual overlap in claims, and the fact that CrossCountry is not precluded from bringing its claims in a separate action, the Court concludes that granting leave to add the proposed counterclaim is not appropriate. *See Aqua Connect v. Code Rebel, LLC*, 2013 WL 2898127, at *2 (C.D. Cal. June 11, 2013) ("[I]t is within the court's discretion to deny leave to amend where the proposed counterclaim presents a cause of action unrelated to the pending action." (internal quotation marks and citation omitted)); *see also Tommy Hilfiger Licensing, Inc. v. Bradlees, Inc.*, 2001 WL 1702151, at *7 (S.D.N.Y. Jan. 11, 2002) (denying leave to add counterclaims "where the new counterclaims are unrelated to Plaintiffs' claims and can be raised without prejudice in a separate action"). Because the Court concludes CrossCountry's counterclaims should not be permitted, it need not address Guild's argument that the

ORDER - 5

counterclaims should be bifurcated to avoid jury confusion due to the need to apply multiple states' laws.

### III.   CONCLUSION

For the reasons discussed above, the Court DENIES Defendant's Motion (dkt. # 40).

Dated this 11th day of April, 2022.

_____
MICHELLE L. PETERSON
United States Magistrate Judge