Exhibit A

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, DC 20549
# FORM 10-Q

☒ **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the quarterly period ended March 31, 2022**

OR

☐ **TRANSITION REPORT UNDER SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from _____ to _____
Commission File Number: 001-39645

# GUILD HOLDINGS COMPANY
### (Exact Name of Registrant as Specified in its Charter)

| | |
|---|---|
| **Delaware** | **85-2453154** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |
| **5887 Copley Drive** | |
| **San Diego, California** | **92111** |
| (Address of principal executive offices) | (Zip Code) |

**Registrant's telephone number, including area code: (858) 560-6330**

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| **Class A common stock, $0.01 par value per share** | **GHLD** | **The New York Stock Exchange** |

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes x No ☐

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§ 232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit such files). Yes x No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer | ☐ | Accelerated filer | ☒ |
| Non-accelerated filer | ☐ | Smaller reporting company | ☒ |
| | | Emerging Growth Company | ☐ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). Yes ☐ No x

As of May 2, 2022, the registrant had 20,723,912 shares of Class A common stock outstanding and 40,333,019 shares of Class B common stock outstanding.

not be able to achieve anticipated benefits from the RMS acquisition or other future acquisitions or investments.

- The coronavirus ("COVID-19") pandemic has had, and will likely continue to have, an adverse effect on our business.
- Pressure from existing and new competitors may adversely affect us.
- Our failure to maintain or grow our historical referral relationships with our referral partners may materially and adversely affect us.
- Servicing advances can be subject to delays in recovery or may not be recoverable at all.
- From time to time our estimates of the fair value of certain assets prove to be inaccurate and we are required to write them down.
- The success and growth of our business will depend upon our ability to adapt to and implement technological changes.
- Our business may be materially and adversely affected by a cybersecurity breach or other vulnerability involving our computer systems or those of certain of our third-party service providers.
- Operating and growing our business may require additional capital that may not be available.
- We are subject to certain operational risks, including employee or customer fraud, the obligation to repurchase sold loans in the event of a documentation error, and data processing system failures and errors.
- We are periodically required to repurchase mortgage loans, or indemnify purchasers of our mortgage loans, including if these loans fail to meet certain criteria or characteristics.
- Seasonality may cause fluctuations in our financial results.
- If we fail to protect our brand and reputation, our ability to grow our business and increase the volume of mortgages we originate and service may be adversely affected.
- We may fail to comply with the complex legal and regulatory framework (including state licensing requirements) governing our mortgage loan origination and servicing activities.
- We are controlled by McCarthy Capital Mortgage Investors, LLC ("MCMI"), and MCMI's interests may conflict with our interests and the interests of our other stockholders.
- We are a "controlled company" and rely on exemptions from certain corporate governance requirements that provide protection to stockholders of other companies.
- Our directors and executive officers have significant control over our business.
- We are a holding company and depend upon distributions from Guild Mortgage Company LLC ("GMC") to meet our obligations.
- We have a dual class common stock structure.
- We identified material weaknesses in our internal control over financial reporting.

Additional risks and uncertainties not presently known to us or that we currently deem immaterial also may impair our business, financial condition, results of operations and cash flows.

Table of Contents

**GUILD HOLDINGS COMPANY**
**NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS**
(In thousands, except as otherwise indicated)
(Unaudited)

## NOTE 1 - BUSINESS, BASIS OF PRESENTATION, AND ACCOUNTING POLICIES

Guild Holdings Company, including our consolidated subsidiaries (collectively, "Guild", the "Company", "we", "us" or "our") originates, sells, and services residential mortgage loans within the United States.

### Basis of Presentation

The accompanying unaudited condensed consolidated financial statements have been prepared in accordance with the rules and regulations of the Securities and Exchange Commission ("SEC") and in accordance with U.S. generally accepted accounting principles ("GAAP") applicable to interim financial statements. These unaudited condensed consolidated financial statements reflect all normal recurring adjustments that are, in the opinion of management, necessary for a fair presentation of the results of the interim period. The condensed consolidated balance sheet data as of December 31, 2021 was derived from audited financial statements but does not include all disclosures required by GAAP. These unaudited condensed consolidated financial statements should be read in conjunction with our consolidated financial statements and related notes included in our Annual Report on Form 10-K for the year ended December 31, 2021. The Company follows the same accounting policies for preparing quarterly and annual reports.

### Principles of Consolidation

The Company's consolidated financial statements include the accounts of the Company, Guild Mortgage Company LLC ("GMC") and their consolidated subsidiaries and those variable interest entities ("VIE") where the Company is the primary beneficiary.

Generally, a VIE is a legal entity in which the equity investors do not have the characteristics of a controlling financial interest or lack sufficient equity at risk for the entity to finance its activities without additional subordinated financial support. In determining whether we are the primary beneficiary of a VIE, we consider qualitative and quantitative factors, including, but not limited to: which activities most significantly impact the VIE's economic performance and which party controls such activities; the amount and characteristics of our investment; the obligation or likelihood for us or other investors to provide financial support; and the similarity with and significance to our business activities and the business activities of the other investors.

The Company consolidates one VIE. At March 31, 2022, the VIE had minimal assets and liabilities.

All intercompany accounts and transactions have been eliminated in consolidation.

### Use of Estimates

The preparation of financial statements in conformity with GAAP requires management to make estimates and assumptions that affect the amounts reported in the financial statements and accompanying notes. Although management is not currently aware of any factors that would significantly change its estimates and assumptions, actual results could materially differ from those estimates.

Beginning in early 2020 and continuing through 2022, the coronavirus ("COVID-19") pandemic, including the emergence of new variants and strains of COVID-19, has presented a substantial public health challenge throughout the United States. The Company remains fully functional in both its origination and servicing operations. The Company continues to monitor guidance published by the World Health Organization, Centers for Disease Control and Prevention, local and federal government agencies and the Mortgage Bankers Association and is in continual communication with its investors regarding the developments in the mortgage industry.

### Escrow and Fiduciary Funds

As a loan servicer, the Company maintains segregated bank accounts in trust for investors and escrow balances for mortgagors, which are excluded from the Company's Condensed Consolidated Balance Sheets. These accounts totaled $1.0 billion and $1.1 billion at March 31, 2022 and December 31, 2021.

### Recent Accounting Standards

In March 2020, the Financial Accounting Standards Board ("FASB") issued Accounting Standards Update ("ASU") No. 2020-4, Reference Rate Reform (Topic 848): Facilitation of the Effects of Reference Rate Reform on Financial Reporting, which provides temporary optional expedients and exceptions to the US GAAP guidance on

8

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this Quarterly Report to be signed on its behalf by the undersigned thereunto duly authorized.

GUILD HOLDINGS COMPANY

| | | |
|---|---|---|
| Dated: May 6, 2022 | By: | /s/ Mary Ann McGarry |
| | Name: | Mary Ann McGarry |
| | Title: | Chief Executive Officer |
| | | |
| Dated: May 6, 2022 | By: | /s/ Desiree A. Kramer |
| | Name: | Desiree A. Kramer |
| | Title: | Chief Financial Officer |

61

Exhibit 10.1

February 28, 2022

Guild Mortgage Company, LLC
5887 Copley Drive
San Diego, California 92111
Attention: Legal Department
E-mail: legal@guildmortgage.net

Ms. McGarry:

 Reference is hereby made to that certain Merger Agreement dated as of May 10, 2021 (the "Merger Agreement"), by and among Guild Mortgage Company LLC, a California limited liability company ("Buyer"), Project Regal Merger Sub, Inc., a Delaware corporation, Residential Mortgage Services Holdings, Inc., a Delaware corporation, RMS Shareholder Representative, LLC, a Delaware limited liability company, and, solely for purposes of Sections 4.20, 9.1, 9.7 and 9.18, Guild Holdings Company, a Delaware corporation. Capitalized terms not defined herein shall have the meanings defined in the Merger Agreement.

 The parties acknowledge that (i) the Retention Bonus Holdback Amount as set forth in the Merger Agreement was an amount equal to $3,900,000, of which $2,000,000 (the "Initial Sales Bonus Amount") was allocated as bonuses to sales employees located at the RMS Branches , (ii) the Retention Bonus Holdback Amount has been released prior to the date hereof, (iii) at the direction of Seeley, the Buyer has paid additional special bonuses in excess of the Initial Sales Bonus Amount to sales employees located at the RMS Branches prior to the date hereof (such amounts in excess of the Initial Sales Bonus Amount, the "Excess Amount"); and (iv) Seeley and Buyer believe that it may be necessary and advisable to pay further special bonuses to the sales employees located at the RMS Branches in an amount that will be determined by Seeley and Buyer (any bonuses actually paid by Buyer, the "Future Sales Bonuses"). In recognition of the foregoing, the parties hereby agree as follows:

 (a) The aggregate Earnout Payments due to be paid to the Holders pursuant to Section 2.12 of the Merger Agreement shall be reduced by $3,000,000 (the "Earnout Setoff"), with such reduction applied to the first annual Earnout Period and any subsequent Earnout Periods on an accrual basis in accordance with GAAP consistently applied and in a manner consistent with Buyer's historical practices; and

 (b) All bonus payments representing the Excess Amount (*less* the amount of the Earnout Setoff) and all Future Sales Bonuses shall be treated as "Expenses" against the Earnout Payments pursuant to Section (c) of Exhibit I attached to the Merger Agreement.

 Sections 9.2 through 9.17 of the Merger Agreement are incorporated herein by reference and made a part hereof.

 If you are in agreement with the foregoing, kindly so indicate by signing and returning a copy of this agreement to the undersigned whereupon this agreement shall become binding as of the date first written above.

*[Signature Page follows]*

AmericasActive:16706401.1

IN WITNESS WHEREOF, the parties hereto, each intending to be legally bound hereby, have executed or caused this letter agreement to be executed as of the date first above written.

**RMS SHAREHOLDER REPRESENTATIVE, LLC**, as Shareholder Representative

_/s/ Brendan Moore_____
Name: Brendan Moore
Title: President

**Accepted and Agreed**:

**Guild Mortgage Company LLC**

By: _____/s/ Mary Ann McGarry_____
Name: Mary Ann McGarry
Title: Chief Executive Officer

746480442.1
AmericasActive:16706401.1

Exhibit B

Table of Contents

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
## WASHINGTON, DC 20549
# FORM 10-Q

☒ **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the quarterly period ended June 30, 2021**

OR

☐ **TRANSITION REPORT UNDER SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from _____ to _____**
**Commission file number: 001-39645**

# GUILD HOLDINGS COMPANY
## (Exact Name of Registrant as Specified in its Charter)

—————————————

| | |
|---|---|
| **Delaware** | **85-2453154** |
| **(State or other jurisdiction of incorporation or organization)** | **(I.R.S. Employer Identification No.)** |
| **5887 Copley Drive** | |
| **San Diego, California** | **92111** |
| **(Address of principal executive offices)** | **(Zip Code)** |

**Registrant's telephone number, including area code: (858) 560-6330**

—————————————

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| Class A common stock, $0.01 par value per share | GHLD | The New York Stock Exchange |

Indicate by check mark whether the registrant (1) has filed all reports required by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes x No ¨

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§ 232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit such files). Yes x No ¨

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer | ☐ | Accelerated filer | ☐ |
| Non-accelerated filer | ☒ | Smaller reporting company | ☒ |
| | | Emerging Growth Company | ☐ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act). Yes ☐ No x

As of August 6, 2021, the registrant had 20,663,625 shares of Class A common stock outstanding and 40,333,019 shares of Class B common stock outstanding.

Table of Contents

MCMI controls any action requiring the general approval of our stockholders, including the election of our Board of Directors, the adoption of amendments to our certificate of incorporation and bylaws and the approval of any merger or sale of substantially all of our assets. So long as MCMI continues to directly or indirectly own a significant amount of our equity, even if such amount is less than a majority of the combined voting power of our outstanding common stock, MCMI will continue to be able to substantially influence the outcome of votes on all matters requiring approval by the stockholders. The interests of MCMI could conflict with or differ from our interests or the interests of our other stockholders. For example, the concentration of ownership held by MCMI could delay, defer or prevent a change of control of our Company or impede a merger, takeover or other business combination that may otherwise be attractive to us or our other stockholders.

### We are a "controlled company" within the meaning of the NYSE rules and, as a result, we are permitted, and elect, to rely on exemptions from certain corporate governance requirements that provide protection to stockholders of other companies.

Because MCMI controls a majority of the combined voting power of our outstanding common stock, we are considered a controlled company under the applicable rules of the NYSE. As a controlled company, we are permitted to elect not to comply with certain corporate governance requirements of the NYSE, including the requirements that:

- a majority of our Board of Directors consist of independent directors;

- we have a nominating and corporate governance committee that is composed entirely of independent directors; and

- we have a compensation committee that is composed entirely of independent directors.

These requirements will not apply to us as long as we remain a controlled company. Accordingly, investors in our Class A common stock may not have the same protections afforded to stockholders of companies that are subject to all of the corporate governance requirements of the NYSE.

### Our directors and executive officers have significant control over our business.

Our directors and executive officers beneficially own, directly or indirectly, in the aggregate, approximately 36.5% of the outstanding shares of our Class A common stock and 100% of the outstanding shares of our Class B common stock (to the extent the Chairman of our Board of Directors may be deemed to beneficially own all of the shares of our Class B common stock beneficially owned by MCMI), representing an aggregate of approximately 97.1% of the combined voting power of our outstanding common stock. As a result, in addition to their day-to-day management roles, our executive officers and directors will be able to exercise significant influence on our business as stockholders, including influence over election of members of the Board of Directors and the authorization of other corporate actions requiring stockholder approval.

### We are a holding company and depend upon distributions from Guild Mortgage Company LLC ("GMC") to meet our obligations.

We are a holding company with no material assets other than our ownership of equity interests in GMC, which is our wholly owned subsidiary. Our ability to pay dividends and to pay taxes and cover other expenses depends on the financial results and cash flows of GMC. As the sole member of GMC, we intend to cause GMC to make distributions to us in amounts sufficient to meet our obligations. Certain laws and regulations, however, may result in restrictions on GMC's ability to make distributions to us. To the extent that we need funds and GMC is restricted from making such distributions under applicable law or regulation or under the terms of any of its financing arrangements, we may not be able to obtain funds on terms acceptable to us or at all and as a result could suffer an adverse effect on our liquidity and financial condition.

Table of Contents

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant caused this Quarterly Report to be signed on its behalf by the undersigned, thereunto duly authorized.

GUILD HOLDINGS COMPANY

| | | |
|---|---|---|
| Dated: August 13, 2021 | By: | /s/ Mary Ann McGarry |
| | Name: | Mary Ann McGarry |
| | Title: | Chief Executive Officer |
| | | |
| Dated: August 13, 2021 | By: | /s/ Desiree A. Elwell |
| | Name: | Desiree A. Elwell |
| | Title: | Chief Financial Officer |

77

Exhibit C

Delaware.gov

Governor | General Assembly | Courts | Elected Officials | State Agencies

**Department of State: Division of Corporations**

Allowable Characters

| HOME | Entity Details |
|------|----------------|

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| File Number: | 7633475 | Incorporation Date / Formation Date: | 9/30/2019 (mm/dd/yyyy) |
|---|---|---|---|
| Entity Name: | CROSSCOUNTRY MORTGAGE, LLC | | |
| Entity Kind: | Limited Liability Company | Entity Type: | General |
| Residency: | Domestic | State: | DELAWARE |

**REGISTERED AGENT INFORMATION**

| Name: | THE CORPORATION TRUST COMPANY | | |
|---|---|---|---|
| Address: | CORPORATION TRUST CENTER 1209 ORANGE ST | | |
| City: | WILMINGTON | County: | New Castle |
| State: | DE | Postal Code: | 19801 |
| Phone: | 302-658-7581 | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information

[ Submit ]

[ View Search Results ]          [ New Entity Search ]

For help on a particular field click on the Field Tag to take you to the help area.

site map | privacy | about this site | contact us | translate | delaware.gov

Exhibit D

**AMENDED AND RESTATED**
**LIMITED LIABILITY COMPANY AGREEMENT**

**OF**

**CROSSCOUNTRY MORTGAGE, LLC**

**DATED AS OF**

**October 2, 2019**

NAI-1508746831v14
US-DOCS\110030329.13

## AMENDED AND RESTATED
## LIMITED LIABILITY COMPANY AGREEMENT

**THIS AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT** (this "**Agreement**"), dated as of October 2, 2019 (the "**Effective Date**"), is entered into by and among CrossCountry Mortgage, LLC, a Delaware limited liability company (the "**Company**"), Radcliff CCM I LLC, a Delaware limited liability company (the "**Investor**"), CrossCountry Holding Corp., an Ohio corporation ("**CCH**") and each other Person who after the Effective Date becomes a Member of the Company and becomes a party to this Agreement.

### RECITALS

**WHEREAS**, the Company was formed as a Delaware limited liability company and successor by conversion to CrossCountry Mortgage, Inc., an Ohio corporation (the "**Predecessor Company**"), under the Delaware Limited Liability Company Act, as amended (the "**Act**"), pursuant to a Certificate of Formation (the "**Certificate of Formation**") and Certificate of Conversion (the "**Certificate of Conversion**") filed with the Secretary of State of the State of Delaware on the Effective Date;



**NOW, THEREFORE**, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Company and the Members hereby adopt the following as the "limited liability company agreement" (as defined in the Act) of the Company:

1



"**Member**" means any Person (a) who is referred to as a Member on <u>Exhibit A</u> to this Agreement or who has become a new Member pursuant to the terms of this Agreement and (b) who has not ceased to be a Member, including Series A Members and Series B Members.



10

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the Effective Date.

COMPANY:

CROSSCOUNTRY MORTGAGE, LLC

By: _____

      Name: Ronald J. Leonhardt
      Title:  Chief Executive Officer

*[Signature Page to LLC Agreement of CrossCountry Mortgage, LLC]*

MEMBER:

**CROSSCOUNTRY HOLDING CORP.**

By: _____

    Name: Ronald J. Leonhardt

    Title:  Chief Executive Officer

*[Signature Page to LLC Agreement of CrossCountry Mortgage, LLC]*

**MEMBER:**

**RADCLIFF CCM I LLC**

By: Radcliff SPV Manager LLC, its Manager

By: _____
    Name: Eli Goldstein
    Title: Manager

*[Signature Page to LLC Agreement of CrossCountry Mortgage, LLC]*

## EXHIBIT A

### MEMBERS

As of October 3, 2019.
**Series A Members:**

| Member | FEIN | Address | Initial Capital Contributions | Transferred Capital | Capital Accounts | Series A-1 Units | Series A-2 Units | Series A Percentage Interest | Percentage Interest |
|---|---|---|---|---|---|---|---|---|---|
| Radcliff CCM I LLC | ███ | ███ | ███ | ███ | ███ | ███ | | ███ | ███ |
| | | **TOTAL** | ███ | ███ | ███ | ███ | | ███ | ███ |

**Series B Members:**

| Member | FEIN | Address | Initial Capital Contributions | Transferred Capital | Capital Accounts | Series B Units | Percentage Interest |
|---|---|---|---|---|---|---|---|
| CrossCountry Holding Corp. | ███ | ███ | ███ | ███ | ███ | ███ | ███ |
| | | **TOTAL** | $███ | ███ | ███ | ███ | ███ |

---

███
███

Exhibit E

*Execution Version*

## SECOND AMENDED AND RESTATED
## OPERATING AGREEMENT
## OF
## CROSSCOUNTRY MORTGAGE, LLC

THIS SECOND AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT (this "Agreement"), dated as of June 6, 2022, is entered into by and between CrossCountry Mortgage, LLC, a Delaware limited liability company (the "Company") and CrossCountry Holdco, LLC, a Delaware limited liability company (the "Member"), as the sole member of the Company.

## RECITALS

WHEREAS, the Company was formed as a Delaware limited liability company and successor by conversion to CrossCountry Mortgage, Inc., an Ohio corporation (the "Predecessor Company"), under the Delaware Limited Liability Company Act, as amended (the "LLC Act"), pursuant to a Certificate of Formation (the "Certificate of Formation") and a Certificate of Conversion (the "Certificate of Conversion"), in each case, filed with the Secretary of State of the State of Delaware on September 30, 2019;

WHEREAS, the Company entered into that certain Amended and Restated Limited Liability Company Agreement of the Company, effective as of October 2, 2019 (as amended, modified and supplemented from time to time, the "Prior Agreement"), pursuant to which the Investor was admitted as a Member of the Company and two new classes of Units were designated with the rights, powers and obligations set forth therein and issued to the Investor and CCH in accordance the terms thereof; and

WHEREAS, the Member and the Company desire to enter into this Agreement to govern the business and affairs of the Company and set forth in full the Member's full rights and obligations with respect to the Company, in each case, upon the terms and conditions hereinafter set forth.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained and other good and valuable consideration, the receipt, adequacy and sufficiency of which is hereby acknowledged, the Member and the Company, intending to be legally bound hereby, each agrees as follows:



"Membership Percentage" means, with respect to the Member, the Member's percentage ownership interest in the Company set forth on **Exhibit A** attached hereto, as the same may be amended from time to time to reflect the relative Capital Contribution of the Member.



IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first above written.

**THE COMPANY**:

**CROSSCOUNTRY MORTGAGE, LLC**

By: _____
Name: Ronald J. Leonhardt
Title:   President and Chief Executive Officer

**THE MEMBER**:

**CROSSCOUNTRY HOLDCO, LLC**

By: _____
Name: Ronald J. Leonhardt
Title:   President and Chief Executive Officer

## **Exhibit A**

**Membership Interest Percentages**

| **MEMBER** | **MEMBERSHIP INTEREST PERCENTAGE** |
|---|---|
| CrossCountry Holdco, LLC | 100% |

# Exhibit F

*Execution Version*

**AMENDED AND RESTATED**
**LIMITED LIABILITY COMPANY AGREEMENT**

**OF**

**CROSSCOUNTRY HOLDCO, LLC**

**DATED AS OF**

**June 6, 2022**

**AMENDED AND RESTATED**
**LIMITED LIABILITY COMPANY AGREEMENT**

 **THIS AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT** (this "**Agreement**"), dated as of June 6, 2022 (the "**Effective Date**"), is entered into by and among CrossCountry Holdco, LLC, a Delaware limited liability company (the "**Company**"), Radcliff CCM I LLC, a Delaware limited liability company (the "**Investor**"), CrossCountry Holding Corp., an Ohio corporation ("**CCH**"), CCM Employee Holdco LLC, a Delaware limited liability company ("**Employee Holdco**"), and each other Person who after the Effective Date becomes a Member of the Company and becomes a party to this Agreement.

**RECITALS**

 **WHEREAS**, the Company was formed as a Delaware limited liability company under the Delaware Limited Liability Company Act, as amended (the "**Act**"), pursuant to a Certificate of Formation (the "**Certificate of Formation**") filed with the Secretary of State of the State of Delaware on January 26, 2022;

 **WHEREAS**, the Company entered into that certain Limited Liability Company Agreement of the Company, dated as of April 22, 2022 (as amended, modified and supplemented from time to time, the "**Prior Agreement**"), pursuant to which CCH and the Investor were admitted Members of the Company;

 **WHEREAS**, CrossCountry Mortgage, LLC, a Delaware limited liability company ("**CCM**") was formed as a Delaware limited liability company and successor by conversion to CrossCountry Mortgage, Inc., an Ohio corporation, under the Act, pursuant to a Certificate of Formation and Certificate of Conversion filed with the Secretary of State of the State of Delaware on September 30, 2019;

 **WHEREAS**, on the date hereof, the Investor and CCH, being the only members of CCM, have contributed all of the outstanding equity interests in CCM to the Company (the "**Contribution**") in exchange for the Units issued to such Members as of the date hereof;



 **NOW, THEREFORE**, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Company and the Members hereby adopt the following as the "limited liability company agreement" (as defined in the Act) of the Company:



"**Member**" means any Person (a) who is referred to as a Member on <u>Exhibit A</u> to this Agreement or who has become a new Member pursuant to the terms of this Agreement and (b) who has not ceased to be a Member, including Series A Members, Series B Members and Series C Members.



IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the Effective Date.

**COMPANY**:

**CROSSCOUNTRY HOLDCO, LLC**

By:_____
Name: Ronald J. Leonhardt
Title:   President and Chief Executive Officer

*[Signature Page to LLC Agreement of CrossCountry Holdco, LLC]*

**MEMBER:**

**CROSSCOUNTRY HOLDING CORP.**

By: _____
Name: Ronald J. Leonhardt
Title:   Chief Executive Officer

**MEMBER:**

**RADCLIFF CCM I LLC**

By: _____
Name: Eli Goldstein
Title: Manager.

**MEMBER:**

**CCM EMPLOYEE HOLDCO LLC**

By: CrossCountry Holdco, LLC, its
managing member

By: _____
Name: Ronald J. Leonhardt
Title:   President and Chief Executive Officer

## <u>EXHIBIT A</u>

## MEMBERS

**Series A Members:**

| Member | FEIN | Address | Series A-1 Preferred Units | Series A-2 Preferred Units | Series A Percentage Interest | Percentage Interest |
|--------|------|---------|---------------------------|---------------------------|------------------------------|---------------------|
| Radcliff CCM I LLC | ██████ | ███████████ ████████ ██████ | ██████ | ████████ | ████████ | ████████ |
| | | TOTAL | ██████ | ████████ | ████████ | ████████ |

**Series B-1 Members:**

| Member | FEIN | Address | Series B-1 Units | Percentage Interest |
|--------|------|---------|------------------|---------------------|
| CrossCountry Holding Corp. | ████████ | ████████████ ██████████ | ████████ | ████████ |
| | | TOTAL | █████████ | █████████ |

**Series B-2 Members:**

| Member | FEIN | Address | Series B-2 Units | Percentage Interest |
|--------|------|---------|------------------|---------------------|
| | | | | |
| | | TOTAL | | |

**Series B-3 Members:**

| Member | FEIN | Address | Series B-3 Units | Percentage Interest |
|--------|------|---------|------------------|---------------------|
| | | | | |
| | | TOTAL | | |

**Series C Members:**

| Member | FEIN | Address | Series C Units | Percentage Interest |
|--------|------|---------|----------------|---------------------|
| | | | | |
| | | TOTAL | | |

Exhibit G

# SUBJECT TO MOTION FOR LEAVE TO FILE UNDER SEAL

Exhibit H

# SUBJECT TO MOTION FOR LEAVE TO FILE UNDER SEAL