JUDGE JOHN C. COUGHENOUR
JUDGE MICHELLE L. PETERSON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GUILD MORTGAGE COMPANY LLC,<br><br>Plaintiff,<br><br>vs.<br><br>CROSSCOUNTRY MORTGAGE LLC,<br><br>Defendant. | Case No. 2:21-CV-01376-JCC-MLP<br><br>**PLAINTIFF GUILD MORTGAGE LLC'S MOTION FOR SANCTIONS AGAINST DEFENDANT CROSSCOUNTRY MORTGAGE, LLC**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>NOTED FOR CONSIDERATION:<br>FRIDAY, OCTOBER 14, 2022 |

PLAINTIFF GUILD MORTGAGE LLC'S MOTION FOR
SANCTIONS AGAINST DEFENDANT
CROSSCOUNTRY MORTGAGE, LLC - 1
USDC 2:21-cv-01376

SIDLEY AUSTIN LLP
555 W. 5th St., Suite 4000
Los Angeles, CA 90013

# INTRODUCTION

Defendant CrossCountry Mortgage, LLC ("CCM") made repeated false statements to this Court and to plaintiff Guild Mortgage Company LLC ("Guild") that CCM and its members were "citizens of Ohio," which it knew or should have known were false. Guild had no way of knowing CCM's citizenship because, by CCM's own admission, that information is not publicly available. As such, Guild' relied on CCM's representations, spending well over $2 million litigating this case nearly to the close of discovery.

After a series of adverse rulings, culminating with a discovery order that foreclosed one of CCM's meritless "defenses" ten months into the case, CCM finally "discovered" an upstream California member, and moved to dismiss this case. CCM is engaging in an insidious form of forum shopping, which has allowed it to preview the majority of this Court's rulings and then, after finding they were not to CCM's liking, to seek different rulings from another court. Re-litigating this case in state court is going to cost Guild many hundreds of thousands of additional dollars. Whether the Court views CCM's misrepresentations as deliberate lies or as acts of recklessness, it would be an injustice to force Guild to pay for CCM's misconduct.

This Court has broad powers to address the misconduct by CCM by issuing sanctions under Local Civil Rule 11(c), 28 U.S.C. § 1927, and the Court's inherent powers, and it should exercise its authority to do so here. If CCM will stipulate that the Court's orders in this case will remain in full force and effect in any new litigation, then Guild will seek ***$253,000*** of the over $2 million it has incurred to partially compensate it for CCM's actions. However, if CCM will not so stipulate (thus confirming the already clear motivation behind its actions in this case), Guild will request that the Court issue sanctions in the amount of ***$633,000***.

## RELEVANT BACKGROUND

**A. CCM's Pre-Filing Knowledge Of Its Corporate Citizenship**

On September 30, 2019, CCM converted from an Ohio corporation to a Delaware limited liability company named CrossCountry Mortgage, LLC. Declaration of Eric B. Schwartz ("Schwartz Decl.") Ex. B; Request for Judicial Notice ("RJN") Ex. B. From the time that

PLAINTIFF GUILD MORTGAGE COMPANY'S
MOTION FOR SANCTIONS AGAINST DEFENDANT
CROSSCOUNTRY MORTGAGE, LLC - 2
USDC 2:21-cv-01376

SIDLEY AUSTIN LLP
555 W. 5th St., Suite 4000
Los Angeles, CA 90013

"CrossCountry first became a limited liability company in 2019" until the filing of this action by Guild, "CrossCountry had two members, one of which is a Delaware limited liability company named Radcliff CCM I LLC, and the other an Ohio corporation with a principal place of business in Ohio named CrossCountry Holding Corp."  Schwartz Decl., Ex. E (Resp. to Rog 15).

"Prior to October 2021," when this action was filed, "CrossCountry . . . was aware that Radcliff CCM I LLC had at least three members, all of which are limited liability companies, as well as the names of those members: Radcliff Principal Holdings LLC, Radcliff CCM I (Feeder) LLC, and Radcliff CCM I (Fam) LLC."  Schwartz Decl., Ex. E (Supp. Resp. to Rog. 15).  CCM claims that "[p]rior to October 2021, CrossCountry did not possess any information regarding the members of the members of Radcliff CCM I LLC,"  Schwartz Decl., Ex. E (Supp. Resp. to Rog. 15), despite the fact CCM's trial counsel in this matter represented CCM in connection with the 2019 reorganization.  Schwartz Decl. Ex. F (Platek Dep. 64:24-67:12).  However, Radcliff asserts that, in October 2019, CCM inquired about the citizenship of upstream members in certain states (not including California), and was provided that information.  Schwartz Decl., Ex. G (Jemal Decl. ¶ 3).

**B. Guild Investigates Citizenship Of CCM And Files Its Complaint**

Prior to filing this case, Guild (1) examined CCM's website, which confirms that it is headquartered in Ohio;[1,2] (2) reviewed the corporate filings for CCM in Ohio, Delaware, and California, which identified Ronald J. Leonhardt, Eli E. Goldstein, and Evan B. Morgan as the "Manager(s) or Members(s)" of CCM, and stated that their addresses were all in Brecksville, Ohio; and (3) conducted research to determine whether disclosures in any of CCM's federal cases revealed its members' identities and their location (they did not).  Schwartz Decl. ¶ 10, Exs. A - D.[3]

On October 8, 2021, Guild filed its complaint, initiating this action.  Dkt 1.  Guild alleged that CCM "is a limited-liability [company] founded in 2003 and organized and existing under the laws of Delaware.  It has its principal place of business in Brecksville, Ohio.  Upon information and belief based on public filings, CrossCountry's members are citizens of Ohio."  Dkt. 1 at 7.  As to its

---

[1] https://crosscountrymortgage.com/about-us/contact-us/.
[2] https://crosscountrymortgage.com/CrossCountry-Mortgage-Launches-New-HQ/.
[3] Guild had no way of knowing CCM had an upstream California member; no public document reveals that information.  *See* Schwartz Decl., Ex. F (Platek Dep. 45:8-46:16).

PLAINTIFF GUILD MORTGAGE COMPANY'S
MOTION FOR SANCTIONS AGAINST DEFENDANT
CROSSCOUNTRY MORTGAGE, LLC - 3
USDC 2:21-cv-01376

SIDLEY AUSTIN LLP
555 W. 5th St., Suite 4000
Los Angeles, CA  90013

1  own corporate citizenship, Guild disclosed that it is "a limited-liability [company][4] organized and
2  existing under the laws of California, with its principal place of business in San Diego, California"
3  and that "Guild's sole member is a Delaware corporation named Guild Holdings Company." Dkt. 1
4  at ¶ 4. At paragraph 11, Guild alleged that diversity jurisdiction exists. Dkt. 1 at ¶ 11.

### C. CCM Falsely Asserts That Its Members Are Citizens Of Ohio

On November 29, 2021, CCM filed an answer alleging that "CrossCountry is a Delaware limited liability corporation with its principal place of business in Brecksville, Ohio and *is an Ohio citizen*." Dkt. 22, ¶ 7 (emphasis added). CCM further alleged that "[t]his Court has jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction) because (1) Plaintiff's sole member is a citizen of Delaware and, upon information and belief based on public filings, *Defendant's members are citizens of Ohio*, and (2) the amount in controversy exceeds $75,000." Dkt. 22, ¶ 7 (emphasis added). "The basis for those statements was the *legal analysis*"—not investigation—"of CrossCountry's counsel and a good faith belief that CrossCountry's members were citizens of Ohio." Schwartz Decl., Ex. E  (Resp. to Rog. 17) (emphasis added); F (Platek Dep. 82:15-84:22). CCM failed and refused to disclose what analysis or investigation actually took place, if any, or to explain the basis for its supposed "good faith." *Id.* The reason is that CCM waited until July 2022 to ask Radcliff whether any upstream members were California citizens. Jemal Decl. ¶¶ 3-4.

On the same day, November 29, 2021, CCM moved to stay the entire litigation, Dkt. 23, Guild opposed, Dkt. 25, and it was correctly denied, Dkts. 35, 39.

### D. CCM Files Its False Corporate Disclosure Statement

On January 3, 2022, three months after the complaint was filed (providing more than sufficient time for a proper investigation), CCM filed a Corporate Disclosure Statement assuring the Court and Guild that CCM "is organized under the laws of the State of Delaware, with its principal place of business in Brecksville, Ohio. *The members of CCM are Ohio citizens*. No publicly owned company owns 10% or more of CCM's stock." Dkt. 34 (emphasis added).

---

[4] The complaint used the word "corporation," but that was an error.

| PLAINTIFF GUILD MORTGAGE COMPANY'S | SIDLEY AUSTIN LLP |
|---|---|
| MOTION FOR SANCTIONS AGAINST DEFENDANT | 555 W. 5th St., Suite 4000 |
| CROSSCOUNTRY MORTGAGE, LLC - 4 | Los Angeles, CA  90013 |
| USDC 2:21-cv-01376 | |

**E. CCM's Improper Counterclaim Falsely Alleges That CCM Is an Ohio Citizen**

On February 15, 2022, CCM filed a motion to file a counterclaim, which stated, under the heading "This Court has Jurisdiction over CCM's Counterclaim": "CCM is a Delaware LLC *with Ohio-resident members.* Therefore, diversity of citizenship exists between Guild and CCM." Dkt. 40 at 7. Guild opposed the motion, Dkt. 42, and it was denied, because it was "not raised for proper purposes." Dkt. 51. CCM later filed its "counterclaim" as a separate action against Guild in Nevada federal court, again invoking diversity jurisdiction on the ground that "CCM is a Delaware LLC with *Ohio-resident members*." Schwartz Decl., Ex. I; RJN Ex. I at ¶¶ 4, 7 (Nevada complaint).

**F. CCM Loses Two Key Discovery Motions**

Due to CCM's obstruction of basic discovery, Guild filed a motion to compel on May 6, 2022 seeking the production of documents and a 30(b)(6) witness. Dkt. 52. The majority of the relief requested was granted on June 8, 2022, with the Court ordering CCM to produce documents in seven days, comply with the ESI protocol in 30 days, and produce a 30(b)(6) designee in 45 days. Dkt. 82. CCM still has not fully complied with that Order. Schwartz Decl. ¶ 12.

On July 14, 2022, CCM moved to compel discovery into Guild's recruiting practices. Dkt. 87. Guild opposed, noting CCM was trying to prove an improper "everybody does it" defense. Dkt. 89. On Monday July 18, 2022, the Court denied CCM's motion. Dkt. 91.

**G. In Response, CCM Investigates Upstream Members And Moves To Dismiss**

According to CCM, "The first time CrossCountry became aware of the potential existence of an upstream member of Radcliff CCM I (FAM) LLC who was potentially a California citizen was during the week of July 18, 2022,"—i.e., *immediately* after the ruling above—"and the first time CrossCountry saw documentary evidence of the existence of such member was the afternoon of Friday, July 22, 2022, when CrossCountry received a copy of the documents that were attached as Exhibits G and H to the Declaration of Michael A. Platt, dated July 22, 2022 (*See* Dkt. Nos. 97-99)." Schwartz Decl., Ex. E (Resp. to Rog. 14). It appears that reason for this late discovery is that CCM's counsel first inquired about CCM's members' citizenship on June 9, 2022 (the day after Guild won its motion to compel), and July 2022 was the first time CCM asked Radcliff for

PLAINTIFF GUILD MORTGAGE COMPANY'S
MOTION FOR SANCTIONS AGAINST DEFENDANT
CROSSCOUNTRY MORTGAGE, LLC - 5
USDC 2:21-cv-01376

SIDLEY AUSTIN LLP
555 W. 5th St., Suite 4000
Los Angeles, CA  90013

information about California citizenship (after CCM lost its motion to compel).  Schwartz Decl., Exs. G, H (Jemal Decl. ¶¶ 3-4; CCM's Privilege Log).[5]

On Friday, July 22, 2022, the same date it purportedly received for the first time documentary evidence of an upstream California member, CCM filed a 10-page motion to dismiss, along with a motion to seal, and a declaration with six exhibits (suggesting that it was ready to go before receiving the documents).  *See* Dkts. 95-99.  The basis for its Motion was a redacted signature page on an LLC agreement by an undisclosed upstream member, dated September 19, 2019, under which there was a partially redacted street name in San Francisco, California.  Dkts. 97-99.

"[O]n or about August 1 or 2, 2022," CCM learned that its first motion was baseless, but that "there were other California Residents among its upstream LLC members."  Schwartz Decl., Ex. E (Supp. Resp. to Rog. 14).  On August 5, 2022, CCM withdrew its first motion to dismiss.  Dkt. 105.

On August 8, 2022, CCM filed its renewed motion to dismiss, this time based on a different supposed upstream California member disclosed to it by Radcliff.  Dkt. 108.

**H. CCM Later Asserts Diversity Jurisdiction In Other Matters, And Refuses To Admit Its Diversity Allegations In This Case Were False**

Since filing its second motion to dismiss, CCM made statements that contradict its assertion that it is a California citizen.  On August 4, 2022, CCM filed an action in federal court in Ohio ***asserting diversity jurisdiction against a California citizen***.[6]  CCM also refused to admit at deposition in this case that it falsely alleged diversity jurisdiction, that its corporate disclosures were false, or that its diversity allegations in the Nevada case were false; it is thus unclear whether CCM believes diversity exists.  Schwartz Decl. Ex. F (Platek Dep. 43:7-44:7, 46:25-48:25, 53:23-56:6).  One possible explanation for this contradictory testimony may be that the answers to those questions were not in the binder from which CCM's 30(b)(6) witness was reading.  Platek Dep. 30:19-25 ("Q. Mr. Platek, throughout the course of the deposition thus far, which has lasted, I don't know,

---

[5] When asked at deposition what prompted CCM's investigation, its counsel objected on privilege grounds, and its corporate representative said he did not know, thus foreclosing any alternative explanations by CCM. Schwartz Decl. Ex. F (Platek Dep. 38:22-40:16)

[6] Schwartz Decl., Ex J; RJN, Ex. J (Complaint filed in *CrossCountry Mortgage, LLC v. Impac Mortgage Holdings, Inc*., United States District for the Northern District of Ohio, Eastern Division, Case No. 1:22-cv-01378 (Aug. 4, 2022)).  CCM amended that complaint to remove the diversity allegations only after being confronted with them at deposition on August 19, 2022.  Schwartz Decl., ¶ 13.

| PLAINTIFF GUILD MORTGAGE COMPANY'S | SIDLEY AUSTIN LLP |
| MOTION FOR SANCTIONS AGAINST DEFENDANT | 555 W. 5th St., Suite 4000 |
| CROSSCOUNTRY MORTGAGE, LLC - 6 | Los Angeles, CA  90013 |
| USDC 2:21-cv-01376 | |

about a half an hour, you've been reading from a document or series of documents. Can you identify for the record what you are reading from? A. I'm reading from a binder that's prepared."); 14:12-13 (similar); 37:22-25 (similar); 50:16-18 (similar); 84:15-21 (similar).

### I. Harm To Guild As A Result Of CCM's Actions

In the 11 months since Guild filed this case, the parties have engaged in hard-fought litigation requiring well over 2,300 hours in attorney and paralegal time, for which Guild has incurred over $2 million in fees, at least $633,000 of which will go to waste, including:

***Orders that could be vacated***: (1) Guild spent approximately 50 hours and $45,000 opposing CCM's motion to assert its counterclaim in this case, which motion was denied. Dkt. 51; Schwartz Decl. ¶ 15(a). (2) Guild was forced to spend over 53 hours and over $42,000 successfully opposing CCM's motion to stay this case. Dkt. 35, 39; Schwartz Decl. ¶ 15(b). (3) Guild spent well over 20 hours and well over $20,000 responding to CCM's discovery into Guild's nationwide recruiting practices, meeting and conferring regarding same, and successfully opposing CCM's motion to compel. Dkt. 91; Schwartz Decl. ¶ 15(c). (4) Guild spent approximately 150 hours and over $146,000 meeting and conferring orally and in writing, and drafting a motion to compel and reply in support of same, which it won. Dkt. 82; Schwartz Decl. ¶ 15(d). There are numerous outstanding issues regarding missing financial information, CCM still has not produced a 30(b)(6) witness to testify as to four topics, and its witness was unprepared as to at least one topic. Schwartz Decl. ¶ 12.

***Third-party discovery***. Guild spent over 180 hours and incurred over $150,000 pursuing third-party discovery, which it is going to have to re-initiate in state court. Schwartz Decl. ¶ 15(e). Because there are over two dozen "third-party" witnesses in this case (many, but not all of which are CCM employees), and because CCM claimed not to have possession, custody, or control of employees' personal devices, Guild was required to and did serve over two dozen subpoenas. *Id.* In response, CCM served several. *Id.* Three of CCM's employees hired outside counsel to move to quash and for a protective order, which Guild successfully opposed at great expense. Dkt. 82. However, after all that work, no depositions have been taken, and, despite protracted negotiation of a search protocol, Guild does not have responsive documents. Schwartz Decl. ¶ 15(e).

PLAINTIFF GUILD MORTGAGE COMPANY'S
MOTION FOR SANCTIONS AGAINST DEFENDANT
CROSSCOUNTRY MORTGAGE, LLC - 7
USDC 2:21-cv-01376

SIDLEY AUSTIN LLP
555 W. 5th St., Suite 4000
Los Angeles, CA 90013

***Early Case Administration.*** Guild spent over 55 hours and approximately $50,000 negotiating early case documents, such as the joint status report, discovery plan, stipulated protective order, ESI protocol, etc., attending hearings, negotiating extensions, and engaging in other early case administration. Schwartz Decl. ¶15(f). That process will have to be repeated in the new venue.

***Response to Motions to Dismiss.*** In response to CCM's two motions to dismiss, Guild was required to incur fees analyzing both motions, conducting research, propounding discovery, moving to compel expedited discovery (which was granted, Dkt. 106), reviewing responses, meeting and conferring, securing and reviewing supplemental responses, preparing for and taking a deposition of CCM's 30(b)(6) witnesses, pursuing third-party discovery, negotiating and moving to reschedule deadlines, and preparing this motion. Schwartz Decl. ¶15(g). In all, Guild spent well over 208 hours and $180,000 in fees on these activities, all of which should be reimbursed.[7]

The parties met and conferred several times ahead of this Motion, and, during a meet and confer on September 1, 2022, Guild stated that it would consider reducing its request for fees if CCM would stipulate that the Court's orders in this case will remain in effect in any new litigation. CCM has not so stipulated. Schwartz Decl. ¶ 24(b). Guild also asked CCM its position as to whether the parties can re-use discovery gathered in this matter in any new matter; CCM would not commit to allowing such use. Schwartz Decl. ¶ 24(c), Ex. O. CCM wants to re-litigate this case.

## LEGAL ARGUMENT

### A. Sanctions Are Warranted Under Local Rule 11(c)[8]

Sanctions are warranted under Local Rule 11(c) because: (1) CCM, without just cause, failed to comply with the Federal Rules of Civil Procedure and the Local Rules; (2) CCM multiplied these proceedings; and (3) CCM created excess costs for which it should compensate Guild. LR 11(c).

***First***, CCM violated the Federal Rules of Civil Procedure and the Local Rules by making

---

[7] Notably, this motion does not seek well over $1 million in fees billed by Guild's primary counsel at Sidley Austin LLP, or any of the fees billed by Seattle counsel at Hillis Clark Martin & Peterson P.S., or any costs, though Guild would be justified in doing so.

[8] Lack of subject matter jurisdiction does not divest a Court of its power to sanction, which is a collateral matter. *Orange Prod. Credit Ass'n v. Frontline Ventures Ltd.*, 792 F.2d 797, 801 (9th Cir. 1986); *Willy v. Coastal Corp.*, 503 U.S. 131, 139 (1992) (Where subject matter jurisdiction is lacking, the court still has authority to adjudicate matters regarding sanctions.).

PLAINTIFF GUILD MORTGAGE COMPANY'S
MOTION FOR SANCTIONS AGAINST DEFENDANT
CROSSCOUNTRY MORTGAGE, LLC - 8
USDC 2:21-cv-01376

SIDLEY AUSTIN LLP
555 W. 5th St., Suite 4000
Los Angeles, CA  90013

numerous false statements without any evidentiary support. CCM falsely represented to this Court in its Answer that it "is an Ohio citizen" and that its "members are citizens of Ohio." Dkt. 22 ¶ 7. CCM falsely stated in its Rule 7.1 corporate disclosure statement that "[t]he members of CCM are Ohio citizens," and failed to disclose the identity and citizenship of its upstream members in violation of Local Rule 7.1. Dkt. 34.[9] CCM filed a motion to file a counterclaim, in which it falsely told this Court that diversity exists because it has "Ohio-resident members." Dkt. 40.[10]

CCM will try to blame Guild for accepting CCM's representations about citizenship, but the Ninth Circuit has held that a ""plaintiff should be permitted to plead jurisdictional allegations as to those defendants on information and belief . . . . The diversity issue is better addressed after the defendants have had an opportunity to respond to the complaint." *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1088 (9th Cir. 2014); *see also Starr Indem. & Liab. Co. v. Point Ruston LLC*, No. C20-5539RSL, 2021 WL 3418824, at *5 (W.D. Wash. Aug. 5, 2021) ("The mere fact that plaintiff's allegations were based on 'information and belief,' does not make them insufficient here."). It was incumbent upon CCM, "which is in the best position to ascertain its own membership, [to] then mount a factual challenge by identifying any member who destroys diversity." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 (3d Cir. 2015). "[A]lthough . . . a defendant need not investigate a plaintiff's citizenship, ***certainly a defendant is responsible for knowing its own citizenship, and could not ignore such only to later claim that subsequent documents revealed to the defendant its own citizenship***." *Dugdale v. Nationwide Mut. Fire Ins. Co.*, No. CIV.A. 4:05CV138, 2006 WL 335628, at *6 (E.D. Va. Feb. 14, 2006) (emphasis added); *see also Cretian v. Job1USA, Inc.*, No. 09-CV-770-ST, 2009 WL 4841039, at *1 (D. Or. Dec. 11, 2009) ("Defendant is presumed to know its own citizenship[.]"); *Williams v. BMW of N. Am., LLC*, No. CV 17-6330 PA (KSX),2017 WL 3730880, at *2 (C.D. Cal. Aug. 28, 2017) (A defendant is presumed to know the facts surrounding its own citizenship.): *Bermudez v. J.C. Penney Co.*, No. CV

---

[9] The Court's local rules require a party's corporate disclosure statement to identify, in addition to the information required by Federal Rule of Civil Procedure 7.1(a), "any member or owner in a joint venture or limited liability corporation," and in a diversity case, "those states in which the party, owners, partners, or members are citizens." *Nw. Frozen v. Victory Packaging LP*, No. C22-0084-JCC, at p.2 (W.D. Wash. Apr. 6, 2022) (citing LCR 7.1(a), (b)).

[10] CCM also told a Nevada District Court that it had "Ohio-resident members." RJN Ex. I at ¶¶ 4, 7.

PLAINTIFF GUILD MORTGAGE COMPANY'S
MOTION FOR SANCTIONS AGAINST DEFENDANT
CROSSCOUNTRY MORTGAGE, LLC - 9
USDC 2:21-cv-01376

SIDLEY AUSTIN LLP
555 W. 5th St., Suite 4000
Los Angeles, CA  90013

10-6998 PA, 2010 WL 3912223, at *1 (C.D. Cal. Oct. 5, 2010) (similar).  Moreover, CCM's numerous affirmative statements about the citizenship of its members dispensed with the need for Guild to adduce further proof of the issue.  *Sentinel Ins. Co. v. Charles*, CASE NO. C11-342 JCC., 2012 BL 188364, at *4 (W.D. Wash. July 25, 2012) (emphasis added) ("[A]dmissions in the pleadings are conclusively binding on the parties and the Court . . . . Judicial admissions are more than evidentiary admissions. ***They have the effect of withdrawing the admitted fact from issue and wholly dispensing with the need for proof of the fact***.")

   ***Second***, CCM clearly multiplied these proceedings.  Given the lack of diversity jurisdiction, they should never have existed at all, and Guild will have to incur hundreds of thousands of additional fees starting over in a new venue.  Guild should not have to shoulder the burden caused by what was, at best, reckless and improper behavior and, at worst, forum shopping by CCM to avoid several adverse rulings.  *See, e.g.*, *Realtime Adaptive Streaming LLC v. Netflix, Inc.*, No. CV 19-6359-GW-JCX, 2020 WL 7889048, at *11 (C.D. Cal. Nov. 23, 2020), *aff'd*, 41 F.4th 1372, 1379 (Fed. Cir. 2022) (awarding $409,402.50 in sanctions and finding "Realtime was aware 'that its lawsuit in Delaware was undeniably tanking,' making its decision to 'run off to another jurisdiction in hopes of getting a more favorable forum [ ] totally unjustified,' and 'improper'"); *Pack v. Hoge Fenton Jones & Appel, Inc.*, No. 12-cv-4512-SC, 2013 WL 140027 at *3 (N.D. Cal. Jan. 10, 2013) ("Further, the timing of [Plaintiff's] [a]ction demonstrates that it was filed for an improper purpose: avoiding the state court's adverse rulings through forum shopping"; awarding sanctions); *John Akridge Co. v. Travelers Cos.*, 944 F. Supp. 33, 34 (D.D.C. 1996), *aff'd*, No. 95-7237, 1997 WL 411654 (D.C. Cir. June 30, 1997) ("This Court finds that Plaintiffs did act in 'bad faith' by filing this suit with the intent to improperly circumvent the Court's ruling in their previous case, and accordingly, this Court will exercise its inherent power to sanction them for that conduct."; awarding fees for all unnecessary stages of defending the litigation); *S. Pac. Shipping Co. Inc. v. Redi-Fresh Produce Inc.*, No. 14 CIV. 4157 LAK AJP, 2014 WL 6968039, at *10 (S.D.N.Y. Dec. 9, 2014) (awarding sanctions based on finding that "[Plaintiff's] behavior exemplifies impermissible forum-shopping" after it filed a second action, dismissed it following defendants' notice of relatedness, and

PLAINTIFF GUILD MORTGAGE COMPANY'S
MOTION FOR SANCTIONS AGAINST DEFENDANT
CROSSCOUNTRY MORTGAGE, LLC - 10
USDC 2:21-cv-01376

SIDLEY AUSTIN LLP
555 W. 5th St., Suite 4000
Los Angeles, CA  90013

re-filed in state court in another state despite the expense involved in re-litigating the same claims).

*Third*, as described in the factual background, above, CCM's actions created substantial excess costs for this Court and for Guild of $253,000 to $633,000, which should be paid to Guild in full.

**B. Sanctions Are Warranted Under Section 1927**

Sanction are also warranted under 28 U.S.C. § 1927 because there is ample evidence that CCM acted with (1) bad faith and/or (2) recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose. *See Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) (reciting standard); *see also In re Girardi*, 611 F.3d 1027, 1061-62 (9th Cir. 2010) ("[W]hat is clear from the case law is that 'a finding that the attorney recklessly or intentionally misled the court is sufficient to impose sanctions under [28 U.S.C.] § 1927.'"; "A 'frivolous' filing is one 'that is *both* baseless and made without a reasonable and competent inquiry.'" (emphasis in original)). Section 1927 "may be characterized as a fee-shifting provision, despite its sanctions trigger." *Blixeth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 632 (9th Cir. 2017) (holding that the costs of obtaining sanctions may be included in a sanctions award under Section 1927: "[T]he plain language of § 1927 permits recovery of fees 'incurred because of [the sanctionable] conduct.'"); *see also McDonald v. OneWest Bank, FSB*, 929 F. Supp. 2d 1079, 1093 (W.D. Wash. 2013) (awarding sanctions "to offset the excess costs caused by defendants' discovery violations, to punish unacceptable behavior, and as a deterrent to future bad conduct").

The facts here present a strong case that CCM acted in bad faith or recklessly by failing to investigate its true citizenship for months, submitting multiple false filings regarding its citizenship, and, then, when rulings were entered that CCM did not like (i.e., denying a stay, denying CCM's counterclaims, granting Guild's motion to compel, and denying CCM's motion to compel), CCM was able to uncover its citizenship and move to dismiss in the span of one week. After the denial of its motion to compel on Monday, July 18, 2022, CCM inquired with Radcliff about California citizenship of upstream members, received an affirmative answer, obtained documents, and filed a 10-page motion to dismiss, along with a declaration and motion to seal, by Friday, July 22, 2022.

PLAINTIFF GUILD MORTGAGE COMPANY'S
MOTION FOR SANCTIONS AGAINST DEFENDANT
CROSSCOUNTRY MORTGAGE, LLC - 11
USDC 2:21-cv-01376

SIDLEY AUSTIN LLP
555 W. 5th St., Suite 4000
Los Angeles, CA 90013

When a party "repeatedly and vexatiously presents 'facts' . . . to the Court that are plainly wrong or misleading, which needlessly prolong and multiply the . . . proceedings and materially increase the burden on the Court, bad faith can be inferred." *Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 979 (E.D. Cal. 2005); *see also Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001) (violation of "ethical and professional duty" was "conduct tantamount to bad faith" for purposes of imposing sanctions). "[T]here is no way to interpret [the] submissions of multiple misleading pleadings under the signature of no less than three attorneys as anything other than a bad faith attempt to mislead the Court about the facts and the law to gain the advantage of prevailing without regard to the true facts and accurate statements of the law." *Moser*, 366 F. Supp. 2d at 984-85. A finding of bad faith is further supported by the fact that CCM's attorneys made repeated false statements to this Court without reasonable or competent inquiry. Wash. R. Prof. Conduct 3.1 (WSBA 2021). A violation of "ethical and professional duty" is "conduct tantamount to bad faith" for purposes of imposing sanctions. *See Gomez*, 255 F.3d at 1134 *In re Girardi*, 611 F.3d at 1035 ("[T]he court may consider codes of professional conduct in determining whether an attorney's conduct falls below the standards of the profession.").

CCM either recklessly failed to determine its LLC members' citizenship or has deliberately misled this Court. Either way, CCM's misconduct wasted substantial judicial and party resources, including by taking positions that were frivolous and/or served an improper purpose. CCM has no excuse for its frivolous assertions; it has known that it had upstream LLC members of uncertain citizenship since it and its trial counsel consummated the deal with Radcliff in 2019, and yet did not investigate the issue in this case until after a series of adverse rulings. Schwartz Decl., Exs. G, H (Jemal Decl. ¶¶ 3-4; CCM's Privilege Log). CCM could have easily found the answer earlier, but chose not to, and Guild should not be forced to pay the price for CCM's inexcusable behavior.

### C. Sanctions Are Warranted Under The Court's Inherent Authority

The Court should also invoke its inherent authority to issue sanctions against CCM for willfully abusing the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). Under its inherent powers, a court may sanction an attorney or party who (1) acts in "bad faith, vexatiously,

PLAINTIFF GUILD MORTGAGE COMPANY'S
MOTION FOR SANCTIONS AGAINST DEFENDANT
CROSSCOUNTRY MORTGAGE, LLC - 12
USDC 2:21-cv-01376

SIDLEY AUSTIN LLP
555 W. 5th St., Suite 4000
Los Angeles, CA  90013

wantonly, or for oppressive reasons" or (2) willfully disobeys a court order. *Chambers*, 501 U.S. at 45–46. The decision whether to impose sanctions is in the discretion of the court. *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 291 (9th Cir. 1995). It is hard to imagine a greater abuse of the judicial process than repeatedly making false statements to the Court about corporate citizenship for months, wasting party and Court time and money, and then revealing the truth near the close of discovery in order to vacate several adverse rulings. Sanctions should be awarded under the Court's inherent authority as well. *J.C. Penney Corp., Inc. v. Oxford Mall, LLC*, No. 1:19-CV-560-KOB, 2021 WL 3421394, at *1 (N.D. Ala. Aug. 5, 2021) (appeal filed July 28, 2022) (awarding sanctions under the Court's inherent authority where Defendant filed a counterclaim falsely alleging diversity and only "discovered" that an LLC member destroyed diversity after years of litigation).[11]

## CONCLUSION

Guild respectfully requests that this Court grant the Motion for Sanctions and sanction CCM in the amount of between $253,000 and $633,000 to partially compensate Guild for the fees wasted litigating this case, depending on whether CCM will agree to be bound by this Court's orders.

DATED: September 9, 2022

SIDLEY AUSTIN LLP
By: */s/ Eric B. Schwartz*
    Chad S. Hummel (*Pro Hac Vice*)
    Eric B. Schwartz (*Pro Hac Vice*)
    555 W. 5th St., Suite 4000
    Los Angeles, CA  90013
    (213) 896-6000
    eschwartz@sidley.com

HILLIS CLARK MARTIN & PETERSON P.S.
Eric D. Lansverk
999 Third Avenue, Suite 4600
Seattle, WA 98104
(206) 470-7634
eric.lansverk@hcmp.com

---

[11] Guild did not proceed under Rule 11 because the procedure set forth in that rule, including the notice requirement and opportunity to cure, is not tailored to the scenario here—potentially months of wasted litigation and fees where notice and "cure" would be a meaningless exercise. That said, Rule 11 could also warrant sanctions against CCM.

PLAINTIFF GUILD MORTGAGE COMPANY'S
MOTION FOR SANCTIONS AGAINST DEFENDANT
CROSSCOUNTRY MORTGAGE, LLC - 13
USDC 2:21-cv-01376

SIDLEY AUSTIN LLP
555 W. 5th St., Suite 4000
Los Angeles, CA  90013

1
2                                            Attorneys for Plaintiff
                                             GUILD MORTGAGE COMPANY LLC
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Counsel for Defendant CrossCountry Mortgage LLC:

| | |
|---|---|
| Benjamin J. Stone | Benjamin.Stone@lewisbrisbois.com |
| Brad Bigos | Brad.bigos@lewisbrisbois.com |
| Kylene R. Slocum | Kylene.Slocum@lewisbrisbois.com |
| John R. Conley | John.Conley@lewisbrisbois.com |
| | Tami.Foster@lewisbrisbois.com |
| | Hilton.Platt@lewisbrisbois.com |
| | Jodi.McKinley@lewisbrisbois.com |
| Michael A. Platt | maplatt@jonesday.com |

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated this 9th day of September, 2022 at Los Angeles, California.

*Leticia Espinoza*

PLAINTIFF GUILD MORTGAGE COMPANY'S
MOTION FOR SANCTIONS AGAINST DEFENDANT
CROSSCOUNTRY MORTGAGE, LLC - 15
USDC 2:21-cv-01376

SIDLEY AUSTIN LLP
555 W. 5th St., Suite 4000
Los Angeles, CA  90013