Judge John C. Coughenour
Judge Michelle L. Peterson

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GUILD MORTGAGE COMPANY LLC,

     Plaintiff,

    vs.

CROSSCOUNTRY MORTGAGE LLC,

     Defendant.

Case No. 2:21-CV-01376-JCC-MLP

## DEFENDANT CROSSCOUNTRY MORTGAGE, LLC'S
## RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE

DEFENDANT CROSSCOUNTRY MORTGAGE, LLC'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE,
2:21-CV-01376-JCC-MLP

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone: (216) 586-3939

**LEWIS BRISBOIS BISGAARD &
SMITH LLP**
1111 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone: 206.436.2020 • Fax
206.436.2030

## <u>TABLE OF CONTENTS</u>

Page

I.   The Court Should Not Impose Sanctions Under Rule 11(c)(3) ...................................... 1

    A.    Any Rule 11 Sanctions Under the Order to Show Cause Would
        Not Be *Sua Sponte* ....................................................................................... 1

    B.    The Order to Show Cause Does Not Satisfy Rule 11(c)(3) ............................... 3

    C.    The Conduct At Issue Falls Outside Rule 11(b)(3) ........................................... 4

    D.    *Sua Sponte* Sanctions Under Rule 11(c)(3) May Not Include An
        Award of Attorneys' Fees, and Must Be Payable Only to the Court .................. 5

    E.    In Any Event, the Ninth Circuit's Heightened Standard For
        Imposing *Sua Sponte* Sanctions Under Rule 11(c)(3) Is Not
        Satisfied ........................................................................................................ 6

II.   CrossCountry Cannot Be Held Responsible for Radcliff's Refusal to
    Disclose Its Citizenship ............................................................................................ 10

III.  Radcliff Will Suffer Injury If CrossCountry's Motion to Seal Is Not
     Granted ................................................................................................................... 12

DEFENDANT CROSSCOUNTRY MORTGAGE, LLC'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE,
2:21-CV-01376-JCC-MLP

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone:  (216) 586-3939

**LEWIS BRISBOIS BISGAARD &
SMITH LLP**
1111 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone: 206.436.2020 • Fax
206.436.2030

1       CrossCountry herein responds to the three distinct issues raised in the Court's Order to

2   Show Cause dated October 31, 2022 (Dkt. 135).

3  **I.     The Court Should Not Impose Sanctions Under Rule 11(c)(3).**

4       Following the October 31 hearing on Guild's Motion for Sanctions (Dkt. 117), the Court

5  ordered CrossCountry "to show cause pursuant to FRCP 11(c)(3) why the Court should not

6  impose sanctions, including attorney's fees, for failure to comply with FRCP 11(b)(3)" (Dkt.

7  135).  CrossCountry fully appreciates the Court's natural inclination to "compensate Guild in

8  some manner" with respect to the mistake that occurred here, in assessing CrossCountry's

9  citizenship for diversity purposes.  (Hearing Transcript of Oct. 31, 2022 ("Tr.") at 34:21; *see also*

10  *id.* at 37:2-4 ("I really want to just focus on how we can move on from this and make sure that

11  Guild is, you know, compensated[.]").)  We note, however, that not every mistake warrants

12  sanctions and, in particular, "Rule 11 does not authorize sanctions for all conduct of which a

13  court might disapprove."  *Stone v. Wolff Properties LLC*, 135 F. App'x 56, 59 (9th Cir. 2005).

14  Indeed, the limitations imposed by that Rule, as well as controlling Ninth Circuit law, preclude

15  the imposition of such sanctions for at least five reasons.

16     **A.    Any Rule 11 Sanctions Under the Order to Show Cause Would Not Be *Sua Sponte*.**

17       As a threshold matter, sanctions are not available under Rule 11(c)(3) because, under

18  these circumstances, such sanctions would not actually be *sua sponte* but rather "initiated" by

19  Guild's Motion for Sanctions.

20       CrossCountry has moved to dismiss this action, on the ground that CrossCountry recently

21  discovered (and Guild has since confirmed) the existence of a California citizen among

22  CrossCountry's upstream members—indeed, a member of a member of a member of a member

23  of CrossCountry—who precluded subject-matter jurisdiction.  (*See* Dkt. 108.)  In the three

24  months that followed CrossCountry raising this issue, the Court did not issue an order to show

25  cause under Rule 11(c)(3).  Guild, however, filed a Motion for Sanctions on September 9, 2022,

26

DEFENDANT CROSSCOUNTRY MORTGAGE, LLC'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE,
2:21-CV-01376-JCC-MLP

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone:  (216) 586-3939

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
1111 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone: 206.436.2020 • Fax
206.436.2030

1    seeking attorneys' fees from CrossCountry.  (Dkt. 117.)  Guild premised its Motion on the

2    Court's inherent power, 28 U.S.C. § 1927, and Local Rule 11(c).  (*Id.*)  Guild further asserted in

3    a footnote that "Rule 11 could also warrant sanctions against CCM."  (*Id.* at 13 n.11.)  Yet Guild

4    declined to seek sanctions under Rule 11 because, it claimed, "the procedure set forth in that

5    rule, including the notice requirement and opportunity to cure, is not tailored to the scenario

6    here."  (*Id.*)  CrossCountry therefore was not afforded the safe-harbor protections of Rule

7    11(c)(2).  The first time the Court raised the prospect of *sua sponte* sanctions under Rule 11(c)(3)

8    was on October 31, 2022, during the oral argument on Guild's Motion for Sanctions.

9         It is true that Rule 11's "safe harbor does not apply to sanctions imposed sua sponte by

10   the Court." *Antonyan v. Client Servs., Inc.*, No. 12-cv-1510, 2013 WL 427924, at *2 (C.D. Cal.

11   Jan. 31, 2013).[1]  Nonetheless, the Ninth Circuit has made clear that the safe harbor cannot be

12   avoided when the sanctions were not *sua sponte* but rather were "initiated" by a party.  In

13   *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 789 (9th Cir. 2001), the movant failed to comply

14   with the safe-harbor provision but the district court nonetheless imposed sanctions under

15   Rule 11.  In reversing, the Ninth Circuit rejected the movant's argument that the district court's

16   order could be interpreted as a Rule 11 award on the court's own initiative, holding:  "We reject

17   [the movant]'s contention because *it was [the movant], not the court, that initiated the award of*

18   *sanctions.*"  *Id.* (emphasis added).  The Court further reasoned that it would render Rule 11's

19   "'safe harbor' provision meaningless to permit a party's noncompliant motion to be converted

20   automatically into a court-initiated motion, thereby escaping the service requirement."  *Id.*;

21   *accord Silaev v. Swiss-Am. Trading Corp.*, No. 14-cv-2551, 2017 WL 394342, at *2 n.5 (D.

22   Ariz. Jan. 30, 2017) (declining to proceed *sua sponte* under Rule 11(c)(3) because "Defendant

23   acknowledges that it could not comply with the 21-day safe harbor provisions," and therefore

24

25

26

---

[1] *Accord Peer v. Lewis*, 606 F.3d 1306, 1315 n.9 (11th Cir. 2010) ("Rule 11 would apply to this scenario had the district court acted sua sponte because the safe harbor provision does not apply when the court imposes sanctions on its own initiative."); *Wesely v. Churchill Dev. Corp.*, 99 F.3d 1141 (Table), 1996 WL 616636, at *3 (6th Cir. 1996) ("the safe harbor provision of Rule 11[] applies only when a motion for sanctions is filed, and not when the court acts sua sponte.").

DEFENDANT CROSSCOUNTRY MORTGAGE, LLC'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE,
2:21-CV-01376-JCC-MLP

2

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone:  (216) 586-3939

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
1111 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone: 206.436.2020 • Fax
206.436.2030

1    "such an award would defeat the very purpose of the Rule").

2           That rationale applies equally here.  Respectfully, if the Court were to impose sanctions

3    under Rule 11, such sanctions would not actually be *sua sponte*.  "*Sua sponte* means '[w]ithout

4    prompting or suggestion; on its own motion."  *Velchez v. Carnival Corp.*, 331 F.3d 1207, 1210

5    (11th Cir. 2003) (quoting *Black's Law Dictionary* 1437 (7th ed. 1999)) (holding that a remand

6    order was not *sua sponte* because "the court was prompted by [the plaintiff] to remand"); *see*

7    *also Sanchez v. Pereira-Castillo*, 590 F.3d 31, 40 (1st Cir. 2009) ("a dismissal is not sua sponte

8    when it responds to a motion to dismiss").  The record here is that such sanctions, if imposed,

9    were prompted or "initiated" by Guild, not the Court.  After all, Guild's Motion for Sanctions

10   explicitly asserted that "Rule 11 could also warrant sanctions against [CrossCountry]" (Dkt. 117

11   at 13 n.11), even though Guild had not satisfied the requirements of Rule 11(c)(2).  And there is

12   no indication that the Court would have raised the prospect of Rule 11 sanctions if not for

13   Guild's Motion and its assertion that Rule 11 sanctions were "warrant[ed]."  Under *Radcliffe*,

14   therefore, such sanctions are not permitted absent compliance with Rule 11's safe harbor.

15           **B.      The Order to Show Cause Does Not Satisfy Rule 11(c)(3).**

16           Rule 11(c)(3) requires that, for a court to issue sanctions *sua sponte*, it must first "order

17   an attorney, law firm, or party to show cause why *conduct specifically described in the order* has

18   not violated Rule 11(b)."  Fed. R. Civ. P. 11(c)(3) (emphasis added); *see* 2 *Moore's Federal*

19   *Practice - Civil* § 11.22[2][a] (2022) (under Rule 11, "an order to show cause must itself be

20   adequate, which requires that the order specifically describe the conduct at issue and direct the

21   party or attorney to demonstrate why that conduct does not violate the rule").[2]

22           Here, the Court's October 31 Order directs that, "[b]y Nov. 14, 2022, Deft. is ordered to

23   show cause pursuant to FRCP 11(c)(3) why the Court should not impose sanctions, including

---

24   [2] *See, e.g.*, *Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*, 174 F.3d 87, 92-93 (2d Cir. 1999) (finding an order to
     show cause deficient when it mentioned potential bases for imposition of sanctions but did not inform party of
25   conduct for which sanctions were to be imposed); *Thornton v. General Motors Corp.*, 136 F.3d 450, 454-55 (5th
     Cir. 1998) (reversing sanctions because district court's order to show cause did not inform attorney that court was
26   considering sanctions for failure to make reasonable pre-filing inquiry).

DEFENDANT CROSSCOUNTRY MORTGAGE, LLC'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE,
2:21-CV-01376-JCC-MLP                                                3

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone:  (216) 586-3939

**LEWIS BRISBOIS BISGAARD &
SMITH LLP**
1111 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone: 206.436.2020 • Fax
206.436.2030

attorney's fees, for failure to comply with FRCP 11(b)(3)."  (Dkt. 135.)  The Order, however, does not describe the specific conduct that the Court wishes to have addressed.  Based on colloquy at the October 31 hearing, CrossCountry reasonably believes that the specific conduct at issue is whether CrossCountry and its lawyers failed to conduct a reasonable investigation before admitting that its members were citizens of Ohio.  (*See* Tr. at 32:18-21 ("I am going to give you two weeks to respond to whether or not CrossCountry and its lawyers violated Rule 11(b)(3), which is essentially failing to do an investigation before making the representation to the Court."); *id.* at 19:5-8 ("[CrossCountry] admitted to the facts, which can be admitted to. Right, you can't waive subject-matter jurisdiction.  I get that, but [CrossCountry] admitted to the facts.").)  While CrossCountry addresses that specific conduct below, it remains the case that the October 31 Order itself does not appear to satisfy Rule 11(c)(3).

### C.      The Conduct At Issue Falls Outside Rule 11(b)(3).

In addition to the procedural issues discussed above, CrossCountry's conduct at issue falls outside the scope of Rule 11(b)(3), which by its terms applies only to "factual contentions."

In order to have violated Rule 11(b)(3), CrossCountry's admissions that its members were citizens of Ohio must constitute "factual contentions."  *See Holmes v. Allstate Corp.*, No. 11-cv-1543, 2012 WL 627238, at *19 (S.D.N.Y. Jan. 27, 2012) ("[a]s they are not 'factual contentions,' these statements are not even not covered by [Rule 11(b)(3)]"), *report and recommendation adopted*, 2012 WL 626262 (S.D.N.Y. Feb. 27, 2012).  But it is well-established that statements of citizenship require legal analysis and therefore are legal contentions.  *See Lacombe v. Bullhead City Hosp. Corp.*, No. 06-cv-2037, 2007 WL 2702005, at *4 (D. Ariz. Sept. 12, 2007) ("As with residency and citizenship, plaintiffs overlook the fact that 'doing business' and a 'principal place of business' are separate and distinct legal concepts."); *Russell v. Samec*, No. 20-cv-263-RSM-JRC, 2020 WL 3441395, at *3 (W.D. Wash. June 4, 2020) (discussing complaint's "legal conclusion that the parties are all citizens of different states").  As one court aptly explained when addressing the citizenship of a natural person:

DEFENDANT CROSSCOUNTRY MORTGAGE, LLC'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE,
2:21-CV-01376-JCC-MLP

4

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone:  (216) 586-3939

**LEWIS BRISBOIS BISGAARD &
SMITH LLP**
1111 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone: 206.436.2020 • Fax
206.436.2030

> *An allegation of "citizenship" is not a "fact."  It is a legal conclusion built upon another legal conclusion*, domicile, which is determined by considering a number of facts that show the party's "true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning."

*Kenshoo, Inc. v. Aragon Advert., LLC*, 586 F. Supp. 3d 177, 184 (E.D.N.Y. 2022) (emphasis added).  The same is true for the citizenship of an LLC, which requires application of the "*legal standard*" that "'an LLC is a citizen of every state of which its owners/members are citizens.'" *Martin v. Palmetto Hosp. of Washington DC LLC*, No. 12-cv-7520, 2012 WL 12882080, at *1 (C.D. Cal. Oct. 26, 2012) (quoting *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006)) (emphasis added; alteration omitted).

Because admissions by CrossCountry regarding the citizenship of its members are legal rather than factual contentions, such statements would instead fall within Rule 11(b)(2), which requires that "legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  This Court's October 31 Order under Rule 11(c)(3) referred only to a potential violation of Rule 11(b)(3), not 11(b)(2).  (Dkt. 135.)  Further, Rule 11 makes clear that "[t]he court must not impose a monetary sanction against a represented party for violating Rule 11(b)(2)."  Fed. Civ. P. 11(c)(5)(A); *see also* 2 *Moore's Federal Practice - Civil* § 11.11[7][a] (2022) ("a party who is represented by an attorney may not be ordered to pay monetary sanctions for violating Rule 11(b)(2)").  Simply put, admissions of citizenship of the kind at issue here—that CrossCountry's members were citizens of Ohio—do not, as a matter of law, violate Rule 11(b)(3).

### D.    *Sua Sponte* Sanctions Under Rule 11(c)(3) May Not Include An Award of Attorneys' Fees, and Must Be Payable Only to the Court.

Under Rule 11(c)(4), an award of sanctions in the form of attorneys' fees is permitted only when such sanctions are "imposed on motion."  Fed. R. Civ. P. 11(c)(4) ("The sanction may include nonmonetary directives; an order to pay a penalty into court; or, *if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees* and other expenses directly resulting from the violation")

DEFENDANT CROSSCOUNTRY MORTGAGE, LLC'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE,
2:21-CV-01376-JCC-MLP

5

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone:  (216) 586-3939

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
1111 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone: 206.436.2020 • Fax
206.436.2030

(emphasis added). Based on the language of Rule 11(c)(4), the Ninth Circuit has observed that "'[t]he [1993] revision [to Rule 11] provides that a monetary sanction imposed after a court-initiated show cause order be limited to a penalty payable to the court.'" *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998) (quoting Fed. R. Civ. P. 11 adv. cmte. notes, 1993 amend.). Accordingly, "[u]nder Rule 11, a district court is not permitted to impose Rule 11 sanctions payable to a party (*e.g.*, in the form of reasonable attorneys' fees) on the basis of a *sua sponte* show cause order." *Gonzales v. Texaco Inc.*, 344 F. App'x 304, 309 (9th Cir. 2009); *accord MyMedicalRecords, Inc. v. Jardogs, LLC*, No. 13-cv-3560, 2015 WL 5445987, at *2 (C.D. Cal. Sept. 16, 2015) (under Rule 11(c)(4), "any sanctions imposed following a court-initiated order to show cause cannot include an attorney fee award to the opposing party"). Instead, "monetary sanctions imposed under Rule 11 on the court's own motion may be paid only to the court." *Smith for J.L. v. Los Angeles Unified Sch. Dist.*, No. 16-cv-2358, 2018 WL 6136820, at *18 (C.D. Cal. Oct. 31, 2018).

Thus, while CrossCountry certainly recognizes the Court's desire to "compensate Guild in some manner" (Tr. at 34:21), Rule 11 does not permit such a result under these circumstances.

### E.    In Any Event, the Ninth Circuit's Heightened Standard For Imposing *Sua Sponte* Sanctions Under Rule 11(c)(3) Is Not Satisfied.

Finally, under the circumstances here, even a penalty payable to the Court would not be appropriate under Rule 11(c)(3). The reasons for this are twofold.

*First*, the Ninth Circuit's heightened standard for *sua sponte* sanctions under Rule 11(c)(3) cannot be satisfied here. The Ninth Circuit has recognized that, because "there is no 'safe harbor' in the Rule" when "sanctions are imposed on the court's own motion," a "particularly stringe[nt]" standard must be satisfied before imposing *sua sponte* sanctions. *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115-16 (9th Cir. 2001). Under that standard, "*sua sponte* sanctions 'will ordinarily be imposed only in situations that are *akin to a contempt of court.*'" *Id.* at 1116 (quoting *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998);

DEFENDANT CROSSCOUNTRY MORTGAGE, LLC'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE,
2:21-CV-01376-JCC-MLP

6

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone:  (216) 586-3939

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
1111 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone: 206.436.2020 • Fax
206.436.2030

Fed. R. Civ. P. 11 adv. cmte. notes, 1993 amend.) (emphasis in original); *accord Gonzales*, 344 F. App'x at 308 (9th Cir. 2009) (directing on remand that, "prior to imposing court-initiated sanctions, the district court is required to determine whether counsel's conduct is 'akin to contempt'"); *Kinney v. Bridge*, No. 16-cv-3211, 2017 WL 130240, at *2 (N.D. Cal. Jan. 13, 2017) (under the "higher bar" imposed by the Ninth Circuit, "*sua sponte* sanctions should be imposed only in situations that are akin to a contempt of court") (quotations omitted).

The "akin to contempt" standard "seems to require conduct that is particularly egregious and similar to conduct that would be sanctionable under the standards for contempt." *Shalaby v. Mansdorf (In re Nakhuda)*, 544 B.R. 886, 901 (B.A.P. 9th Cir. 2016). "Apart from obstruction of judicial proceedings in open court, contempt typically 'consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply.'" *Smith for J.L.*, 2018 WL 6136820, at *19 (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)); *accord Darulis v. Iaria*, No. 06-cv-1139, 2008 WL 5101932, at *4 (S.D. Cal. Dec. 1, 2008) ("Contempt of court, other than obstruction of judicial proceedings in the open court, typically involves a knowing violation of a court order."). Accordingly, courts in this Circuit have held that where a party's "conduct was not of the nature of a violation of a court order, [it] therefore cannot be punished *sua sponte* under Rule 11." *Darulis*, 2008 WL 5101932, at *4; *MyMedicalRecords*, 2015 WL 5445987, at *2 ("Because the Court finds that [the plaintiff] has not acted in bad faith, [*sua sponte*] sanctions under Rule 11 are unjustifiable as well"); *see Stone v. Wolff Properties LLC*, 135 F. App'x 56, 59 (9th Cir. 2005) (reversing *sua sponte* sanctions under Rule 11, finding that appellant's "conduct, though perhaps not laudable, was not so 'egregious' as to be considered 'beyond the pale'").

As demonstrated in the Declarations submitted by CrossCountry in opposition to Guild's Motion for Sanctions (Dkt. 128, 129, 130), CrossCountry's conduct at issue does not come close to anything "akin to contempt." CrossCountry certainly regrets that its admissions of Ohio citizenship were inadvertently incomplete. But CrossCountry made those admissions innocently,

DEFENDANT CROSSCOUNTRY MORTGAGE, LLC'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE,
2:21-CV-01376-JCC-MLP

7

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone: (216) 586-3939

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
1111 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone: 206.436.2020 • Fax 206.436.2030

without an understanding of the legal principles governing its citizenship, and without any conception of the possibility that this case might not be in the correct court.  (*See* Wakefield Decl. ¶¶ 5-8 (Dkt. 129).)  As for CrossCountry's lawyers at Lewis Brisbois, they "did not appreciate at the time that Radcliff was a limited liability company or that it was an outside investment vehicle," and "did not appreciate that CrossCountry's members might have citizenship beyond Ohio."  (Stone Decl. ¶¶ 5-7 (Dkt. 130).)  Likewise, Lewis Brisbois "had inadvertently overlooked the requirement in Local Rule 7.1 that [a Corporate Disclosure] Statement identify the members of CrossCountry."  (*Id.* ¶ 8.)  (By comparison, Guild similarly failed to allege its complete citizenship in its assertion of subject-matter jurisdiction (Dkt. 1 ¶ 11), and likewise failed to comply with Local Rule 7.1(b)'s requirement to identify the citizenship of its member in its Corporate Disclosure Statement (Dkt. 3).)  This was an unfortunate confluence of events, resulting in a mistake that neither CrossCountry nor its lawyers intended or recognized at the time.  But that is nothing close to the kind of deliberate, knowing, and egregious disobedience required to find conduct "akin to contempt."

Indeed, as the Court itself observed multiple times during the October 31 hearing, there was no bad faith, intentional misconduct, or improper purpose here.  (Tr. at 4:13-17 ("I don't think you have evidence that they intentionally did this.  I think it's a gross negligence, but I don't think that anything I've seen says they were lying in the weeds waiting to pounce once they got a bad ruling from this Court or from Judge Coughenour."); 6:8-9 ("I have no reason to discount what Mr. Platt has declared under oath in his declaration."); 8:9-10 ("I am reticent to find bad faith."); 9:25-10:1 ("what I think we have here, is they just messed up"); 34:16-19 ("I certainly don't feel like this is what I would typically call sanctioned conduct.  I'm not finding bad faith, I'm not finding improper purpose or anything like that[.]").)[3]  Thus, *sua sponte*

---

[3] Although the Court alluded at the October 31 hearing to "gross negligence," that issue is academic in light of the controlling "akin to contempt" standard.  CrossCountry notes, however, that "Black's Law Dictionary defines 'gross negligence' as '[t]he intentional failure to perform a manifest duty in reckless disregard of the consequences as

DEFENDANT CROSSCOUNTRY MORTGAGE, LLC'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE,
2:21-CV-01376-JCC-MLP

8

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone: (216) 586-3939

**LEWIS BRISBOIS BISGAARD &
SMITH** LLP
1111 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone: 206.436.2020 • Fax
206.436.2030

1    sanctions under Rule 11(c)(3) would not be appropriate.

2            *Second*, Rule 11(c)(4) makes clear that "sanction[s] imposed under this rule must be

3    limited to what suffices to deter repetition of the conduct or comparable conduct by others

4    similarly situated."  Fed. R. Civ. P. 11(c)(4); *see Corrigan v. Unknown King Cnty. Deputy #1*,

5    No. 05-cv-1727-P, 2006 WL 3091210, at *4 (W.D. Wash. Oct. 27, 2006) ("the primary purpose

6    of Rule 11 sanctions is deterrence, not compensation").  But the record is that monetary

7    sanctions are not required to deter the conduct at issue.  Here, that conduct was innocent and

8    inadvertent, resulting from CrossCountry's failure to appreciate, among other things, the law

9    dictating the citizenship of an LLC, and Lewis Brisbois's failure to appreciate a key fact—*i.e.*,

10   the nature of the Radcliff entity.  (*See* Wakefield Decl. ¶¶ 4-8; Stone Decl. ¶¶ 4-7.)  Meanwhile,

11   Ms. Wakefield has confirmed that, had she known about the need to ask Radcliff CCM I LLC

12   about the citizenship of its own members, "[she] would have made those inquiries with Radcliff

13   CCM I LLC at that time." (Wakefield Decl. ¶ 6.)  Ms. Wakefield now knows of such a need,

14   and the mistake that occurred here therefore will not happen again.  Likewise, Mr. Stone at

15   Lewis Brisbois did not—but now does—know the requirements of Local Rule 7.1(b) (*see* Stone

16   Decl. ¶ 8), and that mistake therefore is also not going to happen again.  Beyond that, as the

17   Ninth Circuit observed in a similar context, this Court's admonishment is sufficient under these

18   circumstances to deter a reoccurrence:

19           As anyone experienced in litigation knows, lectures in open court are often
             sufficient to press home the significance of local rules, particularly for a first
20           offense.  Public embarrassment is, beyond cavil, a powerful motivator of human
             conduct.
21
22   *Zambrano v. City of Tustin*, 885 F.2d 1473, 1480 n.24 (9th Cir. 1989).  Likewise, as the Eleventh

23   Circuit observed in virtually identical circumstances, the fact that CrossCountry itself incurred

24   substantial attorneys' fees as a result of its mistake, along with "the damage done to the Parties'

25   affecting the life or property of another; such a gross want of care and regard for the rights of others as to justify the
     presumption of willfulness and wantonness.'" *Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1015 (9th Cir.
26   1999) (quoting *Black's Law Dictionary* 1185 (4th ed. 1968)).  The mistake at issue here does not represent such an
     extreme departure from the standard of care that the failure can be deemed to have been intended.

DEFENDANT CROSSCOUNTRY MORTGAGE, LLC'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE,
2:21-CV-01376-JCC-MLP

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone:  (216) 586-3939

**LEWIS BRISBOIS BISGAARD &
SMITH LLP**
1111 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone: 206.436.2020 • Fax
206.436.2030

credibility, finances, and time *is enough of a sanction to curb their conduct and to serve as a warning to future diversity jurisdiction litigants*." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1228 (11th Cir. 2017) (emphasis added).[4]

For the foregoing reasons, CrossCountry respectfully submits that the Court should not impose sanctions under Rule 11(c)(3).

## II.   CrossCountry Cannot Be Held Responsible for Radcliff's Refusal to Disclose Its Citizenship.

The Court also ordered CrossCountry to address the "enforceability of LCR 7.1(b) when an LLC party has upstream members who refuse to disclose their citizenship." (Dkt. 135.)  Here, the record makes clear that CrossCountry should not be held responsible in that situation.

At the outset, it is well established that CrossCountry, as a Delaware LLC, "has a separate juridical existence distinct from its members." *Wood v. U.S. Bank Nat'l Ass'n*, 246 A.3d 141, 148 (Del. Ch. 2021).  "This means that the LLC has an existence recognized by law as distinct from that of its members and others just as a corporation is recognized as having a legal existence separate and apart from its stockholders." *Id.* (quotation and alteration omitted). Accordingly, CrossCountry's upstream members—*i.e.*, Radcliff, Radcliff's members, the members of those members, and so on—constitute third parties that are not before the Court.  It is well established that the litigation conduct of a third party cannot be attributed to

[4] *See also Montrose Chem. Corp. v. Am. Motorists Ins. Co.*, 117 F.3d 1128, 1136 (9th Cir. 1997) (reversing award of Rule 11 sanctions because counsel's failure to properly plead plaintiff's principal place of business and citizenship was not the result of any improper purpose and constituted "the type of technical error that courts traditionally allow parties to correct"); *New V&J Produce Corp. v. NYCCaterers Inc.*, No. 13-cv-4861, 2014 WL 5026157, at *6, *9 (S.D.N.Y. Sept. 29, 2014) (no monetary sanctions under Rule 11 because, even though "it was patently clear that diversity jurisdiction could not be satisfied," attorney invoking diversity jurisdiction had "no apparent ill intent"); *Productos Mercantiles E Indus., S.A. v. Faberge USA, Inc.*, No. 92-cv-7916, 1993 WL 362391, at *10 (S.D.N.Y. Sept. 14, 1993), *aff'd in relevant part*, 23 F.3d 41 (2d Cir. 1994) (admonishing counsel's "poor judgment" and "sloppy legal work" in asserting diversity jurisdiction, but rejecting sanctions under Rule 11 because counsel "professed lack of knowledge of [defendant's] business structures," making it "plausible that a competent attorney could form a reasonable belief that the claim of diversity was well grounded in fact and warranted by existing law"); *Taylor v. United States*, 151 F.R.D. 389, 397-398 (D. Kan. 1993) (declining to impose Rule 11 sanctions on plaintiff because "it would be imprudent[] to impose an objective standard of reasonable inquiry on a nonsigning represented party . . . obviously relying upon her attorney to conduct a reasonable inquiry and determine whether her claims are 'well grounded in fact' and 'warranted by existing law'" and plaintiff "simply made a mistake" in failing to provide pertinent information to her attorney, such that "the primary purpose of Rule 11, to deter the filing of frivolous claims, w[ould] not be furthered by sanctioning such an apparently honest mistake by a nonsigning party").

DEFENDANT CROSSCOUNTRY MORTGAGE, LLC'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE,
2:21-CV-01376-JCC-MLP

10

JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone:  (216) 586-3939

LEWIS BRISBOIS BISGAARD &
SMITH LLP
1111 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone: 206.436.2020 • Fax
206.436.2030

CrossCountry.  *See, e.g.*, *Kerr v. McKay*, No. 20-cv-190, 2022 WL 479140, at *6 (S.D. W. Va. Feb. 15, 2022) ("discovery sanctions are not appropriate against Defendant WVDHHR for the purported non-compliance by DOH—a separate entity and a non-party"); *Realtime Data, LLC v. Metropcs Texas, LLC*, No. 10-cv-493, 2012 WL 12904706, at *5 (E.D. Tex. Oct. 23, 2012) (declining to sanction the defendant for a non-party's conduct because the non-party and the defendant were "separate entities").

Further, the record here is that Radcliff is an outside, third-party investor that CrossCountry has no control over.  (Wakefield Decl. ¶ 3; Schwartz Decl. Ex. E at 7-8 (Dkt. 118-5); Jemal Decl. ¶ 2 (Dkt. 118-7); CrossCountry's Am. Corporate Disclosure Statement (Dkt. 126).)  While Local Rule 7.1(b) requires CrossCountry to list "those states in which the party, owners, partners, or members are citizens," LCR 7.1(b), the reality is that only Radcliff—not CrossCountry—has access to the citizenship of Radcliff's members.  Yet Radcliff declined to provide that complete information to Guild in response to a subpoena, and even to CrossCountry for purposes of its recently-filed Amended Corporate Disclosure Statement (Dkt. 126).  Because information regarding Radcliff's upstream members is outside of CrossCountry's possession, ownership, and control, and Radcliff will not disclose anything more than whether it is a citizen of specific relevant states, such as Delaware and California, CrossCountry is—through no fault of its own—unable to comply with the strict terms of Local Rule 7.1(b).[5]  CrossCountry fully appreciates the difficulty this situation creates for itself and the Court.  But that is not a dilemma that can be remedied or deterred through sanctions against CrossCountry.  Instead, we proffer that the reasonable solution to this problem is not to ignore the separate juridical existence of CrossCountry as distinct from its members, but rather to resort to well-known tools of third-party discovery, including Fed. R. Civ. P. 45, to obtain any additional information necessary to comply

[5] Nonetheless, CrossCountry's Amended Corporate Disclosure Statement (Dkt. 126) demonstrates that it has now taken "all reasonable steps within [CrossCountry's] power to comply" with Local Rule 7.1(b), and therefore sanctions under Rule 11 would not be warranted merely because CrossCountry has been unable, through no fault of its own, to identify every state in which Radcliff has citizenship.  *Smith for J.L.*, 2018 WL 6136820, at *19 (C.D. Cal. Oct. 31, 2018) (quotations omitted).

1    with Local Rule 7.1(b).

2         We further note that, as of next month, Fed. R. Civ. P. 7.1 will be amended to mirror the

3    requirements of Local Rule 7.1(b).[6]  The Advisory Committee Note for that amendment

4    emphasizes that the amended rule "does not address the questions that may arise when a

5    disclosure statement or discovery responses indicate that the party or intervenor cannot ascertain

6    the citizenship of every individual or entity whose citizenship may be attributed to it."  Fed. R.

7    Civ. P. 7.1 Committee Note (2021).  At the same time, "[t]he rule recognizes that the court may

8    limit the disclosure in appropriate circumstances."  *Id.*  For example, "[d]isclosure might be cut

9    short when a party reveals a citizenship that defeats diversity jurisdiction."  *Id.*  These comments

10   confirm that the approach CrossCountry undertook in its Amended Corporate Disclosure

11   Statement—identifying its members and their citizenship to the extent disclosed by Radcliff,

12   which was sufficient to discover citizenship relevant to the diversity-jurisdiction analysis—

13   presents a reasonable solution that will inform CrossCountry's conduct going forward.

14   **III.     Radcliff Will Suffer Injury If CrossCountry's Motion to Seal Is Not Granted.**

15        As to the Court's Order that CrossCountry "clarify what injury will result if the

16   documents are not sealed" (Dkt. 135), CrossCountry notes that the documents at issue consist

17   entirely of excerpts of organizational documents of Radcliff and certain of its upstream members,

18   as well as a declaration containing the personal information of the California citizen who

19   precludes diversity jurisdiction.  Because those documents implicate the confidentiality and

20   privacy interests of its third-party investor—Radcliff and its upstream members—CrossCountry

21   conveyed the Court's Order to Radcliff's counsel to address the Court's query.  Radcliff

22   thereafter provided the accompanying Declaration of Daniel Jemal, dated November 11, 2022.

23   CrossCountry refers to, and incorporates herein, that Declaration as a full and complete recitation

24   of the injury that will result if these documents are not sealed.

25

26   ───────────────

[6] *See* Memorandum From the Comm. on Rules of Prac. and Proc. to Scott S. Harris, Clerk, Sup. Ct. of the U.S. (Oct. 18, 2021) 126-28, *at https://www.uscourts.gov/sites/default/files/scotus_package_2021_final_0.pdf.*

DEFENDANT CROSSCOUNTRY MORTGAGE, LLC'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE,
2:21-CV-01376-JCC-MLP

12

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone: (216) 586-3939

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
1111 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone: 206.436.2020 • Fax
206.436.2030

1

Dated:  November 14, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Respectfully submitted,

JONES DAY


*s/ Michael A. Platt*
Michael A. Platt, *Admitted Pro Hac Vice*
maplatt@jonesday.com
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Tel:  (216) 586-3939
Fax:  (216) 579-0212


LEWIS BRISBOIS BISGAARD & SMITH LLP


*s/ Benjamin J. Stone*
Benjamin J. Stone, WA Bar No. 33436
Benjamin.Stone@lewisbrisbois.com

*s/ John R. Conley*
John R. Conley, *Admitted Pro Hac Vice*
John.Conley@lewisbrisbois.com
1111 Third Avenue, Suite 2700
Seattle, Washington 98101
Tel:  (206) 436-2020
Fax:  (206) 436-2030

*Counsel for Defendant*
*CrossCountry Mortgage, LLC*

DEFENDANT CROSSCOUNTRY MORTGAGE, LLC'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE,
2:21-CV-01376-JCC-MLP

13

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone:  (216) 586-3939

**LEWIS BRISBOIS BISGAARD &
SMITH LLP**
1111 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone: 206.436.2020 • Fax
206.436.2030

1

## DECLARATION OF SERVICE

2    I hereby certify that on November 14, 2022, I electronically filed the foregoing with the

3    Clerk of the Court using the CM/ECF System, which will send notification of such filing to the

4    following:

5    ***Counsel for Plaintiff Guild Mortgage Company***

6
7    Eric D. Lansverk                    eric.lansverk@hcmp.com
                                          Carol.cannon@hcmp.com

8    Chad S. Hummel (Pro Hac Vice)       chummel@sidley.com
9    Eric B. Schwartz (Pro Hac Vice)     eschwartz@sidley.com
     Renee Perisi (Pro Hac Vice)         rpesiri@sidley.com
10                                        lespinoza@sidley.com
                                          lruiz@sidley.com
11                                        laefilingnotice@sidley.com

12   Dated:   November 14, 2022 at Seattle, Washington.

13                                        *s/ Tami L. Foster*
14                                        Tami L. Foster, Legal Secretary
                                          Tami.Foster@lewisbrisbois.com

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT CROSSCOUNTRY MORTGAGE, LLC'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE,        14
2:21-CV-01376-JCC-MLP

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone:  (216) 586-3939

**LEWIS BRISBOIS BISGAARD &
SMITH LLP**
1111 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone: 206.436.2020 • Fax
206.436.2030