1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8  GUILD MORTGAGE CO. LLC,

9                          Plaintiff,           Case No. C21-1376-JCC-MLP

10         v.                                   REPORT AND RECOMMENDATION

11  CROSSCOUNTRY MORTGAGE LLC,

12                         Defendant.

13

14                        I.        INTRODUCTION

15         This matter is before the court on three motions: (1) Defendant CrossCountry Mortgage

16  Co., LLC's ("CrossCountry") Motion to Seal ("Defendant's Motion to Seal" (dkt. # 107));

17  (2) CrossCountry's Motion to Dismiss ("Defendant's Motion to Dismiss" (dkt. # 108)); and

18  (3) Plaintiff Guild Mortgage Co., LLC.'s ("Guild") Motion for Sanctions ("Plaintiff's Motion for

19  Sanctions" (dkt. # 117)). CrossCountry seeks to dismiss this action on the grounds that, because

20  it and Guild share California citizenship, diversity of citizenship is incomplete and thus the Court

21  lacks subject matter jurisdiction. (Def.'s Mot. to Dismiss.) Guild does not oppose dismissal, but

22  seeks recovery of attorney's fees based on CrossCountry's failure to uncover its California

23  citizenship until ten months into the litigation. (Pl.'s Mot. for Sanctions.)

The Court held oral argument on October 31, 2022. (Dkt. # 135.) At oral argument, the Court: (1) requested further briefing on Defendant's Motion to Seal; and (2) pursuant to Federal Rule of Civil Procedure ("Rule") 11(c)(3), ordered CrossCountry to show cause by November 14, 2022, why the Court should not impose sanctions, including attorney's fees, for failure to comply with Rule 11(b)(3). (*Id.*) CrossCountry filed its response ("OSC Response") on November 14, 2022. (OSC Resp. (dkt. # 138).) The Court permitted Guild to file an optional reply brief and fee application by November 16, 2022, and Guild did so. (Dkt. ## 135, 140-41.)

Having reviewed the parties' submissions, oral argument, the governing law, and the balance of the record, the Court GRANTS in part Defendant's Motion to Seal (dkt. # 107), recommends Defendant's Motion to Dismiss (dkt. # 108) be GRANTED, and DENIES Plaintiff's Motion for Sanctions (dkt #117).

With respect to the Court's Order to Show Cause, the Court ORDERS CrossCountry to provide a complete list of its states of citizenship or pay $25,000 in Sanctions within 30 days of the date this Report and Recommendation is adopted.

## II.    BACKGROUND

Guild alleges that, around July 2021, CrossCountry, "a competing mortgage lender," conspired with three Guild employees (the "Individual Employees") to persuade other Guild employees to "misappropriate nearly all of Guild's Kirkland, Washington branch, including dozens of employees [and] massive amounts of confidential business and client information[,]" and to divert loans in process at Guild to be closed at CrossCountry instead. (Compl. (dkt. # 1) at 1-2, ¶¶ 1-3.) Guild filed the instant suit on October 8, 2021, seeking injunctive relief as well as damages. (*Id.* at 33-34, ¶¶ 1-9.) Guild alleged civil conspiracy, tortious interference with

1   business expectancy, tortious interference with contractual relationships, unfair competition, and

2   violations of California Penal Code 502. (*Id.* at 25-32, ¶¶ 64-110.)

3         In its Complaint, Guild stated it is "a limited-liability corporation organized . . . under the

4   laws of California, with its principal place of business in San Diego, California." (Compl. at 2,

5   ¶ 4.) Guild alleged diversity jurisdiction was proper under 28 U.S.C. § 1332 because "Plaintiff's

6   sole member is a citizen of Delaware and, upon information and belief based on public filings,

7   Defendant's members are citizens of Ohio[.]" (*Id.* at 3, ¶ 11.) In its contemporaneously filed

8   Corporate Disclosure Statement, Guild stated it "is a limited-liability corporation whose sole

9   member is a Delaware Corporation named Guild Holdings Company." (Pl.'s Disclos. (dkt. # 3)

10  at 1.)

11        On November 29, 2021, CrossCountry filed its answer, "admit[ting] CrossCountry is a

12  Delaware limited liability corporation with its principal place of business in Brecksville, Ohio

13  and is an Ohio citizen" and admitting Guild's allegations regarding jurisdiction. (Def.'s Ans.

14  (dkt. # 22) at ¶¶ 7, 11.) The same day, CrossCountry filed a motion to stay proceedings pending

15  the outcome of related arbitration proceedings Guild had filed against the Individual Employees.

16  (Dkt. # 23.) This Court issued a Report and Recommendation to deny the motion, which was

17  adopted by the Honorable John C. Coughenour on February 14, 2022. (Dkt. ## 35, 39.)

18        On January 3, 2022, CrossCountry filed a Corporate Disclosure statement, asserting it "is

19  organized under the laws of the State of Delaware, with its principal place of business in

20  Brecksville, Ohio. [Its] members . . . are Ohio citizens." (Def.'s Disclos. (dkt. # 34) at 1.)

21        On February 25, 2022, CrossCountry filed a Motion for Leave to File a Permissive

22  Counterclaim (dkt. # 40), which this Court denied. (Dkt. # 51.) In its proposed counterclaim,

23  CrossCountry alleged that "Guild is a California LLC with its sole member being a Delaware

1  corporation and [CrossCountry] is a Delaware LLC with Ohio-resident members." (Dkt. # 41,
2  Ex. A at ¶ 4.)

3      Over the next few months, the Court resolved several discovery disputes. In May 2022,
4  Guild filed a motion to compel discovery responses and the Individual Employees filed nonparty
5  motions to quash. (Dkt. ## 52, 55, 61, 65.) After oral argument was conducted on all four
6  motions, Guild's motion was granted in part and the Individual Employees' motions were
7  denied. (Dkt. ## 80, 82.) Next, on July 12, 2022, CrossCountry filed a Letter/Motion for
8  Discovery and oral argument was held on July 14, 2022. (Dkt. ## 87, 90.) On July 18, 2022, the
9  Court denied CrossCountry's motion. (dkt # 91.)

10      On July 22, 2022, CrossCountry filed a motion to dismiss the complaint based on lack of
11  diversity jurisdiction. (Dkt. # 96.) In response, the Court struck the status conference scheduled
12  for August 5, 2022, (dkt. # 101) but held a discovery conference, ordering CrossCountry to
13  "produce all responsive documents and information [and] a corporate designee for a Rule
14  30(b)(6) deposition" regarding its citizenship and "withdraw its . . . Motion to Dismiss the
15  Complaint for Lack of Subject Matter Jurisdiction (dkt. # 96) without prejudice to refiling[.]"
16  (Dkt. # 106.)

17      On August 8, 2022, CrossCountry filed the instant Motion to Seal and Motion to Dismiss.
18  (Dkt. ## 107-08.) On September 5, 2022, Guild filed a Notice of Conditional Non-Opposition to
19  Defendant's Motion to Dismiss, acknowledging that it had no grounds to challenge dismissal for
20  lack of subject matter jurisdiction. (Dkt. # 116 at 1.)

21      On September 9, 2022, Guild filed its Motion for Sanctions, arguing that CrossCountry
22  repeatedly made false statements and engaged in "forum shopping." (Pl.'s Mot. for Sanctions at

23

REPORT AND RECOMMENDATION - 4

1.) CrossCountry filed a response in opposition (Def.'s Resp. (dkt. # 127)) and Guild filed a reply (Pl.'s Reply (dkt. # 132)).

On September 23, 2020, as directed by the Court, both parties filed amended corporate disclosure statements. (Dkt. ## 124-26.) Guild stated it is a limited liability company ("LLC") and "a citizen of Delaware and California for diversity of citizenship purposes." (Pl.'s Am. Disclos. (dkt. #125 at 1).) CrossCountry identified itself as an LLC and stated that it is a citizen of California through one of its upstream members, Radcliff CCM I LLC ("Radcliff"), but is unable to ascertain the full extent of its citizenship because Radcliff "declined to provide" its complete citizenship. (Def.'s Am. Disclos. (dkt. # 126) at 2.)

### III.   DISCUSSION

#### A.   Requests for Judicial Notice

In support of its Motion for Sanctions, Guild requests judicial notice of three documents from State government websites and two complaints filed in other federal district courts. (Dkt. # 120.) In support of its opposition to Plaintiff's Motion for Sanctions, CrossCountry requests judicial notice of four documents from a publicly available website, for purposes of showing their content is publicly available, and six documents publicly filed with State and federal agencies and a federal district court. (Dkt. # 131.)

The Court may take judicial notice of "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007). Judicial notice may be taken of facts that are not subject to reasonable dispute because they are generally known or "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably

1    questioned." *U.S. v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003); Fed. R. Evid. 201(b).

2    Accordingly, the parties' requests for judicial notice are hereby GRANTED.

3    **B.    CrossCountry's Motion to Seal**

4    First, CrossCountry seeks to maintain four documents under seal. (Def.'s Mot. to Seal.)

5    The first is a redacted version of Radcliff's LLC Agreement, which identifies an LLC (the "Tier

6    2 LLC Member") as a member. (*Id.*, Ex. G (dkt. # 107-1).) The second is a redacted version of

7    the Tier 2 LLC Member's LLC Agreement, which identifies another LLC (the "Tier 3 LLC

8    Member") as a member. (*Id.*, Ex. H (dkt. # 107-2).) The third is a redacted version of the Tier 3

9    LLC Member's Operating Agreement, which identifies a natural person ("Natural Person

10   Member") as a member. (*Id.*, Ex. I (dkt. # 107-3).) The fourth is a declaration by the Natural

11   Person Member claiming permanent residency in California. (*Id.*, Ex. J (dkt. # 107-4) at ¶¶ 2,

12   4-5.)

13   CrossCountry contends the documents should be sealed "to protect the financial privacy

14   of certain non-parties to this case[.]" (Def.'s Mot. to Seal at 2.) It argues "[i]njury will result if

15   these documents are not sealed, because sensitive, non-public information will be revealed

16   publicly, invading the privacy of the non-parties[.]" (*Id.* at 4.) Guild initially opposed the Motion

17   to Seal, but withdrew its opposition. (Dkt. ## 110, 115.)

18   There is a strong presumption in favor of public access to judicial records and documents.

19   W.D. Wash. Local Civil Rule ("LCR") 5(g); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S.

20   589, 597 (1978). As the Ninth Circuit explained in *Kamakana v. City & Cnty. of Honolulu*,

21   "judicial records are public documents almost by definition, and the public is entitled to access

22   by default." 447 F.3d 1172, 1180 (9th Cir. 2006). This "federal common law right of access" to

23   court documents generally extends to "all information filed with the court," and "creates a strong

REPORT AND RECOMMENDATION - 6

presumption in favor of access to judicial documents which can be overcome only by showing

sufficiently important countervailing interests." *Phillips ex Rel. Estates of Byrd v. Gen. Motors*

*Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002) (citations and quotation marks omitted).

LCR 5(g) requires that a motion to seal a document include:

A specific statement of the applicable legal standard and the reasons for keeping a document under seal, including an explanation of: (i) the legitimate private or public interests that warrant the relief sought; (ii) the injury that will result if the relief sought is not granted; and (iii) why a less restrictive alternative to the relief sought is not sufficient. Evidentiary support from declarations must be provided where necessary.

LCR 5(g)(3)(B).

In determining the applicable standard, "[t]he focus . . . is on whether the motion at issue

is more than tangentially related to the underlying cause of action." *Ctr. for Auto Safety v.*

*Chrysler Grp., LLC*, 809 F.3d 1092, 1099 (9th Cir. 2016). When the motion is more than

tangentially related to the merits, the movant must show compelling reasons for overcoming the

presumption in favor of public access. *Id.* at 1096-97. Otherwise, a party need only show good

cause. *Id.* CrossCountry contends the lower "good cause" standard applies here. (Def.'s Mot. to

Seal at 3.)

Other district courts in this Circuit have concluded that a motion to dismiss for lack of

jurisdiction, without reaching the merits of the claims, should be considered non-dispositive for

purposes of determining the standard to seal. "An order on a motion to dismiss for lack of

personal jurisdiction . . . does not resolve the merits of the underlying causes of action, and is

only tangentially related to the merits. If such a motion is granted, it is without prejudice to

re-filing the action so as to cure the jurisdictional defect." *Young v. Actions Semiconductor Co.*,

2007 WL 2177028, at *2 (S.D. Cal. July 27, 2007). The Court finds this reasoning persuasive

with regards to subject matter jurisdiction as well.

1    However, even under the less demanding "good cause" standard, CrossCountry's Motion

2  to Seal fails to show that injury will result from disclosure. *See* LCR 5(g)(3)(B)(ii)."A party

3  asserting good cause bears the burden, for each particular document it seeks to protect, of

4  showing that specific prejudice or harm will result if no protective order is granted." *Foltz v.*

5  *State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). "[B]road allegations of

6  harm, unsubstantiated by specific examples or articulated reasoning," will not suffice. *Id.*

7  (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)).

8    CrossCountry contends the documents at issue should be sealed because they reveal "the

9  identities of non-party investors, information about the organizational structure of non-parties,

10  and sensitive information about the financial interests of the same." (Def.'s Mot. to Seal at 4-5.)

11  But financial information such as membership percentages and capital commitments in the LLC

12  agreements is redacted. (*See id.*, Exs. G at 5, I at 18.) And, with regard to "organizational

13  structure," the fact that two of the non-parties are structured as LLCs is revealed by their names,

14  and thus is publicly available information. *See Kamakana*, 447 F.3d at 1184 (affirming denial of

15  motion to seal information that was "already publicly available").

16    CrossCountry's remaining argument appears to be that an entity's or person's

17  membership in an LLC is private financial information. (Def.'s Mot. to Seal at 4-5.) Yet

18  CrossCountry identified Radcliff, CrossCountry Holding Corp., and CrossCountry Holdco, LLC

19  as its upstream members in its publicly available briefing.[1] (*See* Def.'s Mot. to Dismiss at 5;

20  Second Platt Decl., Exs. D (dkt. # 109-4) at 8, E (dkt. # 109-5) at 5, F (dkt. # 109-6) at 9.)

21  Moreover, LCR 7.1 requires a party to identify "any member or owner in a . . . limited liability

22  corporation (LLC)[.]" LCR 7.1(a).

23

---

[1] In addition, the names of the Tier 2 and Tier 3 LLC Members are found in discovery responses publicly filed with the Court. (Schwartz Decl., Ex. G (dkt. # 118-5) at 6-7.)

1      The Court also rejects CrossCountry's contention that, as a general principle, LLC

2 membership information must be sealed. CrossCountry makes several arguments on the issue.

3 First, CrossCountry argues "personal information of non-litigants" should be kept under seal.

4 (Def.'s Mot. to Seal at 4 (citing *Alegre v. United States*, 2021 WL 4934982 (S.D. Cal. July 29,

5 2021).) The court in *Alegre* found compelling reasons to redact "private and sensitive

6 information, including names, dates of birth, and addresses" found in "census records, [tribal]

7 membership rolls, enrollment records, and family tree records." 2021 WL 4934982 at *3. Here,

8 no birth dates or addresses are found in the documents at issue. And the names found in the LLC

9 agreements only reveal membership in an LLC, rather than personal, tribal, or family

10 information.

11      CrossCountry next argues "financial information of . . . non-parties" should be protected,

12 citing *Johnson v. Quantum Learning Network, Inc.*, 2016 WL 4472993 (N.D. Cal. Aug. 22,

13 2016), and *Omni MedSci, Inc. v. Apple Inc.*, 2019 WL 9834334 (N.D. Cal. Nov. 25, 2019).

14 (Def.'s Mot. to Seal at 4.) In *Johnson*, the court granted the parties' motion to seal unidentified

15 "sensitive financial information of non-parties . . . as well as sensitive financial information of

16 Defendant that, if made public, could harm Defendant's business interests." *Johnson*, 2016 WL

17 4472993 at *2. But here, CrossCountry's Motion to Seal does not explain how membership in an

18 LLC is sensitive financial information and shows no potential harm to business interests. In

19 *Omni*, as in *Johnson*, the court did not identify the type of information it found required

20 protection, stating only that it found good cause to seal an employer's "confidential information

21 with personnel . . . given the non-dispositive nature of the [related] motion." *Omni MedSci, Inc.*,

22 2019 WL 9834334 at *2. Here, CrossCountry's Motion to Seal fails to explain how membership

23 in an LLC is as sensitive as confidential employment records.

1    Finally, CrossCountry argues the court in *Selling Source, LLC v. Red River Ventures,*

2  *LLC*, 2011 WL 1630338 (D. Nev. Apr. 29, 2011), sealed information about "*corporate structure,*

3  *. . .* finances[,] and commercial operations." (Def.'s Mot. to Seal at 4.) The court in *Selling*

4  *Source* found good cause to seal "detailed information regarding the parties' business operations,

5  customer agreements, corporate structure, the details of Selling Source's customer base and how

6  the company works with and licenses products to its customers and measures it takes to protect

7  its intellectual property." 2011 WL 1630338 at *2. Taken together, this information constituted

8  "trade secrets and proprietary business practices." *Id*. But CrossCountry has not shown that trade

9  secrets and proprietary business practices would be revealed by the documents at issue here. The

10  *Selling Source* court did not seal any documents revealing only corporate structure. *See id.*

11  (sealing document that "discusses Selling Source's corporate structure and purchase agreement

12  details"). The court specifically declined to seal documents "discuss[ing] relationships between

13  non-party individuals and entities." *Id.* at *3. Membership in an LLC is more similar to a

14  relationship between individuals and entities than to trade secrets and proprietary business

15  practices.

16    The Court thus rejects the blanket proposition that LLC membership must be sealed.

17  However, along with CrossCountry's OSC Response, CrossCountry provided a declaration by

18  Daniel Jemal, who states he is CFO of Radcliff and the Tier 2 LLC Member for "Radcliff CCM I

19  (Fam) LLC." (Jemal Decl. (dkt. # 139) at ¶ 1.) Mr. Jemal states that these two LLCs "consider

20  [their] investor information both highly confidential and competitively sensitive." (*Id.* at ¶ 2.)

21  Specifically, Mr. Jemal avers:

22        If [the LLCs are] unable to continue to represent that [they] will keep [their]
          investors' identities private, [they] could lose investors. It is not difficult to imagine
23        that some potential investors would be unwilling to invest money in certain
          companies or projects if their investments are made public. There can be

tremendous pressure from certain sectors of the public not to invest in certain industries or projects viewed as conflicting with some perceived concerns.

(*Id.* at ¶ 3.)

Given that Mr. Jemal identified the Tier 2 LLC Member in his publicly filed declaration, the Court concludes that no reason has been offered for sealing the redacted version of Radcliff's LLC agreement that identifies the Tier 2 LLC Member (dkt. # 107-1). Because Radcliff identifies concern about losing investors who fear public pressure not to invest in its projects, the Court concludes there has been a sufficient showing of potential injury if the remaining documents are not sealed.

Accordingly, the Court grants in part the Motion to Seal. The Tier 2 LLC Member's LLC agreement (Def.'s Mot. to Seal, Ex. H (dkt. # 107-2)), Tier 3 LLC Member's LLC agreement (*id.*, Ex. I (dkt. # 107-3)), and declaration by the Natural Person Member (*id.*, Ex. J (dkt. # 107-4)) shall remain under seal.

### C.    CrossCountry's Motion to Dismiss

An unincorporated entity, such as an LLC, "'is a citizen of every state of which its owners/members are citizens,' not the state in which it was formed or does business." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 612 (9th Cir. 2016) (quoting *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Thus, to determine citizenship of an LLC, one must determine the citizenship of each of its members.

The Ninth Circuit has held that courts must look beyond the first layer of LLCs to determine citizenship, as it is common for an LLC to be a member of another LLC. *Johnson*, 437 F.3d at 894. When an LLC's members include other unincorporated entities, such as additional LLCs or partnerships, "a [party] must trace through however many layers of partners or members there may be until the underlying party's citizenship is established." *Asana Partners Fund II*

1  *REIT 14 LLC v. Heath Family I LLC*, 2020 WL 7241449, at *2 (W.D. Wash. Dec. 9, 2020). In

2  doing this analysis, often the citizenship of an LLC will look like "a factor tree that exponentially

3  expands every time a member turns out to be an LLC." *Zambelli Fireworks Mfg. Co., Inc. v.*

4  *Wood*, 592 F.3d 412, 420 (3d Cir. 2010).

5          *1.*     *Guild's Citizenship*

6          Guild is a limited liability company with one member, Guild Holdings Company. (Pl.'s

7  Am. Disclos.) Guild Holdings Company is a corporation incorporated in Delaware with its

8  principal place of business in San Diego, California. (Second Platt Decl., Ex. A (dkt. # 109-1) at

9  2, 6.) For purposes of diversity jurisdiction, a corporation is a citizen of the state in which it is

10  incorporated and the state where its principal place of business is located. 28 U.S.C.

11  § 1332(c)(1). Thus, Guild Holdings Company—and, in turn, Guild—is a citizen of Delaware and

12  California.

13          *2.*     *CrossCountry's Citizenship*

14          CrossCountry is a limited liability company.[2] (Schwartz Decl. (dkt. # 118), Ex. A (dkt.

15  # 118-1) at 2; Second Platt Decl., Ex. D (dkt. # 109-4) at 3.) Beginning October 3, 2019,

16  CrossCountry, according to its amended LLC agreement, comprised two members: (1) Radcliff;

17  and (2) CrossCountry Holding Corp.[3] (Second Platt Decl., Ex. D at 3, 8; *see also id.*, Ex. F (dkt.

18  # 108-6) at 9.) CrossCountry Holding Corp. is an Ohio corporation with its principal place of

19  business in Ohio. (Wakefield Decl. (dkt. # 129) at ¶¶ 3-4.) Thus, CrossCountry's citizenship

20  includes Ohio.

---

21  [2] On September 30, 2019, CrossCountry converted from an Ohio corporation to a Delaware limited

22  liability comp. (Schwartz Decl. (dkt. # 118-2), Ex. B at 3-4.)

23  [3] As of June 6, 2022, CrossCountry now has one member, CrossCountry Holdco, LLC. (Second Platt
Decl., Ex. E (dkt. # 109-5) at 5.) CrossCountry Holdco, LLC has two members: (1) CrossCountry
Holding Corp.; and (2) Radcliff. (*Id.*, Ex. F (dkt. # 109-6) at 9.) Thus, at all times since the Complaint
was filed, Radcliff has been a part of CrossCountry's upstream analysis in determining citizenship.

Radcliff is a limited liability company with three members. (Second Platt Decl., Ex. G (dkt. # 107-1) at 5.) One of these is the Tier 2 LLC Member, one of whose members is the Tier 3 LLC Member. (*Id.*, Ex. H (dkt. # 107-2) at 5.) The Tier 3 LLC Member has a member who is a natural person, who has been a citizen of California since before this case was initiated. (*Id.*, Exs. I (dkt. #107-3) at 18, J at ¶¶ 2, 4-5.) Thus, CrossCountry is a citizen of, at a minimum, Ohio and California for purposes of diversity of citizenship.

### 3.   *Diversity Jurisdiction Analysis*

"Diversity jurisdiction requires complete diversity between the parties[.]" *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1234 (9th Cir. 2008); *see also Carden v. Arkoma Assoc.*, 494 U.S. 185, 189, 192–197 (1990) (to meet the complete diversity requirement, all partners of an entity must be diverse from all parties on the opposing side). Because Guild and CrossCountry share citizenship in California, complete diversity is absent, and thus, the Court lacks jurisdiction over this action.

Accordingly, the Court recommends Defendant's Motion to Dismiss be granted.

### D.    **Guild's Motion for Sanctions**

Next, Guild contends CrossCountry should be sanctioned for its false representations to the Court regarding its citizenship due to its failure to conduct a reasonable investigation. (Pl.'s Mot. for Sanctions.) Guild requests this Court award Guild $633,000 in attorney's fees to compensate it, in part, for the over two million dollars' worth of attorney's fees and costs it has accrued over the course of litigation. (*Id.* at 2.) Guild states it offered to reduce its sanctions request to $253,000 if CrossCountry would stipulate to this Court's orders remaining in effect in any new litigation, but CrossCountry declined. (*Id.*; Pl.'s Reply at 3 n.1.) At oral argument, the Court indicated any attorney's fees award would be far less than Guild's reduced request.

1    (Hearing Transcript (dkt. # 137) at 35:1-2 ("You're not going to get anything near $250,000 in

2    fees.").) Guild's subsequent fee application seeks $337,000. (Dkt. # 141 at 2.)

3              *1.*    *Background*

4           Michael A. Platt, attorney with Jones Day for CrossCountry, provided a declaration

5    outlining the discovery of the diversity-destroying upstream member. (Third Platt Decl. (dkt.

6    # 128).) On October 3, 2019, while representing CrossCountry in unrelated litigation, Mr. Platt

7    asked Radcliff's outside counsel about Radcliff's citizenship in seven states and received yes or

8    no answers for each, including a 'no' for Delaware. (*Id.* at ¶ 7.) Mr. Platt states that "because of

9    that exchange, [he] was aware that CrossCountry, which had just become a limited liability

10   company, had citizenship in multiple states other than Ohio." (*Id.*)

11          In late May 2022, Mr. Platt learned he would join Lewis Brisbois as counsel in the instant

12   action. (Third Platt Decl. at ¶ 3.) On June 3, 2022, he read Guild's complaint and concluded it

13   did "not sufficiently plead complete diversity of citizenship between Guild and CrossCountry."

14   (*Id.* at ¶ 4.) On June 9, 2022, "CrossCountry reached out to Latham & Watkins (. . . counsel for

15   CrossCountry in connection with recent financing matters) regarding the possible existence of

16   any California citizenship with respect to Radcliff[.]" (*Id.* at ¶ 6.) During "the week of July 18,

17   2022[,] Radcliff disclosed for the first time, in response to CrossCountry's inquiry, the potential

18   existence of an upstream member who was potentially a California citizen." (*Id.*) Jones Day

19   began preparing a motion to dismiss, which was filed July 22, 2022, the same day Mr. Platt

20   received documentary evidence of California citizenship. (*Id.*)

21             *2.*    *Jurisdiction*

22          Guild contends, and CrossCountry does not dispute, that this Court retains jurisdiction to

23   impose sanctions even without subject matter jurisdiction over the underlying suit. (Pl.'s Mot. for

Sanctions at 8 n.8.). The Court agrees. *See Orange Prod. Credit Ass'n v. Frontline Ventures Ltd.*, 792 F.2d 797, 801 (9th Cir. 1986) ("The fact that the district court lacked jurisdiction to consider the merits of the case did not preclude it from imposing sanctions."); *Willy v. Coastal Corp.*, 503 U.S. 131, 137 (1992) (Affirming sanctions although subject matter jurisdiction was lacking because "[t]he District Court order which the petitioner seeks to upset is one that is collateral to the merits.").

Guild contends sanctions in the form of attorney's fees are warranted under LCR 11(c), 28 U.S.C. § 1927, and the Court's inherent power. (Pl.'s Mot. for Sanctions at 2.) However, all three of these require a finding of bad faith or other intentional misconduct. Although CrossCountry's failure to conduct a reasonable investigation into its citizenship is highly suggestive of gross negligence, bad faith has not been shown on the record before the Court. Accordingly, as further detailed below, the Court concludes sanctions in the form of attorney's fees are not warranted in this matter.

### 3.    *Attorney's Fees under Local Civil Rule 11(c)*

First, Guild argues sanctions are warranted under LCR 11(c) because: (1) CrossCountry made "numerous false statements without any evidentiary support," and (2) such false statements multiplied these proceedings and created substantial excess costs for Guild and this Court. (Pl.'s Mot. for Sanctions at 8-11.) On this issue:

> An attorney or party who without just cause fails to comply with any of the Federal Rules of Civil or Criminal Procedure, these rules, or an order of the court, or who presents to the court unnecessary motions or unwarranted opposition to motions, or who fails to prepare for presentation to the court, or who otherwise so multiplies or obstructs the proceedings in a case may, in addition to or in lieu of the sanctions and penalties provided elsewhere in these rules, be required by the court to satisfy personally such excess costs and may be subject to such other sanctions as the court may deem appropriate.

LCR 11(c).

1    CrossCountry argues that, because a district court may not "expand its authority beyond

2    the bounds of the law," the Court's authority to sanction "could only emanate from either the

3    Court's inherent authority or possibly Federal Rule of Civil Procedure 11." (Def.'s Resp. at 8.)

4    However, CrossCountry does not provide any authority supporting this proposition.

5        While local rules must not flout federal law or rules, they need not simply replicate them.

6    *See* 28 U.S.C. § 2071 (local rules must be "consistent with Acts of Congress and rules of practice

7    and procedure"). The Ninth Circuit has "consistently upheld the power of the district court to

8    sanction attorneys for violations of local rules." *Zambrano v. City of Tustin*, 885 F.2d 1473, 1477

9    (9th Cir. 1989); *see also* Fed. R. Civ. P. 83(b) ("No sanction or other disadvantage may be

10   imposed for noncompliance with any requirement not in federal law, federal rules, or the local

11   rules[.]").

12       Power to impose such sanctions is limited. Courts may impose sanctions in the form of

13   attorney's fees under local rules only for "bad faith actions or willful disobedience of court

14   orders or rules." *Zambrano*, 885 F.2d at 1481. The Ninth Circuit requires a lesser showing for

15   monetary sanctions to be paid to a court, however. *Zambrano*, 885 F.2d at 1480-81 (Monetary

16   sanctions may be imposed on attorneys for "recklessness, gross negligence, repeated—although

17   unintentional—flouting of court rules, or willful misconduct" but "there is an even higher

18   threshold for awarding attorneys fees than for leveling direct fines against members of the bar.").

19       CrossCountry argues no subjective bad faith has been shown, relying on declarations

20   from its corporate counsel and outside counsel that they "did not appreciate" any need to

21   determine whether CrossCountry's members such as Radcliff had citizenship in other states until

22   June 2022. (Def.'s Resp. at 5-6, 10-11; *see also* Wakefield Decl. (dkt. # 129) at ¶ 5; Stone Decl.

23   (dkt. # 130) at ¶ 5.) While CrossCountry's failure to properly investigate its citizenship in the

early stages of this litigation suggests gross negligence, particularly with regard to its affirmative representations in its proposed counterclaim, the Court concludes that Guild has not shown this failure involved bad faith or willful disobedience of court orders or rules.

Accordingly, the Court finds that an imposition of attorney's fees is not warranted under LCR 11(c).

### 4. Attorney's Fees under 28 U.S.C. § 1927

Guild further contends sanctions are warranted under § 28 U.S.C. § 1927 because CrossCountry "acted with (1) bad faith and/or (2) recklessness" when it submitted false filings regarding its citizenship and failed to investigate its citizenship for months. (Pl.'s Mot. for Sanctions at 11.) Guild argues that only when unfavorable rulings to CrossCountry were entered did CrossCountry uncover its true citizenship. (*Id*.) Section 1927 permits sanctions only against attorneys admitted before the Court:

> Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

"Sanctions pursuant to section 1927 must be supported by a finding of subjective bad faith." *Blixseth v. Yellowstone Mtn. Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015) (quoting *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989)). "[B]ad faith is present when an attorney knowingly or recklessly raises a frivolous argument[.]" *Id*. "[R]ecklessly or intentionally misrepresenting facts constitutes 'the requisite bad faith and intentional misconduct for which sanctions under § 1927 are appropriate.'" *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010) (quoting *Malhiot v. S. Calif. Retail Clerks Union*, 735 F.2d

1133, 1138 (9th Cir.1984)). "For sanctions to apply, if a filing is submitted recklessly, it must be frivolous[.]" *In re Keenan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996).

Guild argues the bad faith or recklessness standard is met for § 1927 sanctions because CrossCountry "submitt[ed] multiple false filings regarding its citizenship[.]" (Pl.'s Mot. for Sanctions at 11.) This Court has held that the recklessness standard is difficult to meet, previously finding that:

> The statute sets a very high threshold before an attorney will be required to reimburse the opposing party for a portion of its attorney's fees. A high threshold is appropriate given the likelihood that fee shifting could chill advocacy. The Court therefore starts its analysis with the presumptions that an award of fees is not appropriate and that counsels' conduct falls within the acceptable realm of zealous advocacy, untainted by bad faith.

*Ortego v. Lummi Island Scenic Ests. Cmty. Club, Inc.*, 2017 WL 1210065, at *2 (W.D. Wash. Apr. 3, 2017), *aff'd*, 738 F. App'x 912 (9th Cir. 2018). Therefore, despite CrossCountry's egregious errors in failing to determine its citizenship, the Court finds Guild has not overcome the presumption of good faith. The record here does not establish intentional misconduct, bad faith, or a filing that was both frivolous and submitted recklessly. Accordingly, the Court declines to award attorney's fees pursuant to § 1927.

### 5.   *Court's Inherent Authority*

Lastly, Guild contends that, because CrossCountry willfully abused the judicial process, sanctions are warranted under this Court's inherent authority to issue sanctions. (Pl.'s Mot. at 12.) The Ninth Circuit requires "a finding of bad faith before sanctions may be imposed under the court's inherent power." *Zambrano*, 885 F.2d at 1478. Because the Court does not find bad faith has been established, attorney's fees are unavailable under the Court's inherent power.

1

**E.      Order to Show Cause**

2       CrossCountry contends the Court cannot impose sanctions under Rule 11(c) because: (1)

3   sanctions would not be genuinely *sua sponte*; (2) the Court's Order to Show Cause did not

4   describe specific conduct; (3) CrossCountry's conduct did not violate Rule 11(b)(3); (4) *sua*

5   *sponte* sanctions cannot include attorney's fees; and (5) CrossCountry's conduct was not

6   egregious enough to warrant sanctions. (OSC Resp. at 6-10.)

7       Rule 11 provides that "[i]f, after notice and a reasonable opportunity to respond, the court

8   determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on

9   any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R.

10  Civ. P. 11(c)(1). Sanctions may be initiated by a party. Fed. R. Civ. P. 11(c)(2). Alternatively,

11  "[o]n its own, the court may order an attorney, law firm, or party to show cause why conduct

12  specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3).

13              *1.      Sua Sponte Sanctions*

14      Relying on *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 789 (9th Cir. 2001),

15  CrossCountry argues that any sanctions here would not be *sua sponte* because they were

16  "initiated" by Guild's sanctions motion. (OSC Resp. at 2-3.) In *Radcliffe*, the Ninth Circuit found

17  the district court abused its discretion in awarding Rule 11 sanctions on defendant's motion

18  where the defendant had not complied with the mandatory safe harbor provisions. 254 F.3d at

19  788-89. The Ninth Circuit also "reject[ed defendant's] argument that the district court's order for

20  sanctions can be interpreted as a Rule 11 motion on the court's own initiative[.]" *Id.* at 789. The

21  Ninth Circuit found that "it was [defendant], not the court, that initiated the award of sanctions"

22  and that the district court's statement that a "'literal application of the safe harbor provision' was

23  unnecessary in this case" "serves to emphasize this point." *Id.*

1    Here, the Court is expressly considering sanctions after issuing a show cause order

2    pursuant to Rule 11(c)(3). Neither party has any way of knowing whether the Court had

3    considered sanctions before Guild filed its motion. It would be illogical and contrary to the

4    purpose of Rule 11 if a party's sanctions motion operated as a bar to a court considering

5    sanctions on its own initiative at any later time.

6    *Radcliffe* does not stand for such a proposition. In *Radcliffe*, the court never issued a

7    show cause order regarding sanctions and never purported to impose sanctions on its own

8    initiative. The Ninth Circuit rejected defendant's argument that "a party's noncompliant motion

9    [could be] converted automatically into a court-initiated motion[.]" *Radcliffe*, 254 F.3d at 789.

10   No such "automatic" conversion is at issue here.

11   CrossCountry also cites *Silaev v. Swiss-America Trading Corp.*, 2017 WL 394342 (D.

12   Ariz. Jan. 30, 2017). In that case, the defendant's Rule 11 motion could not comply with the safe

13   harbor provision because its summary judgment motion had already been granted dismissing the

14   "questionable" claim. *Id.* at *2. The court declined to impose sanctions *sua sponte* because the

15   plaintiff could no longer withdraw its claim and thereby escape sanctions. *Id.* at *2 n.5. Nor

16   could the court, as it had not issued a show cause order.

17   *Silaev* points to a fundamental difference between Rule 11 sanctions on a party's motion

18   and on the court's initiative. A party's Rule 11 motion cannot be filed after withdrawal or

19   correction of the improper filing within the safe harbor period. Fed. R. Civ. P. 11(c)(2). Such a

20   limitation is appropriate to inhibit adverse parties from using Rule 11 as a supplemental field of

21   battle. Rule 11 sanctions on a court's initiative, however, do not face the same limitation. Fed. R.

22   Civ. P. 11(c)(3). In situations where withdrawal of an offending filing is either impossible or

23

1    would not remedy the harm caused, it would be inappropriate to limit a court from imposing

2    sanctions as necessary to deter comparable conduct. *See* Fed. R. Civ. P. 11(c)(4).

3        The Court concludes that the fact that Guild filed a sanctions motion does not prevent the

4    Court from considering sanctions *sua sponte*. Accordingly, the Court proceeds to consider

5    CrossCountry's OSC Response.

6        *2.    Specific Conduct*

7        CrossCountry contends the Court's Order to Show Cause does not satisfy Rule 11(c)(3)

8    because it did not specifically describe what conduct violated Rule 11(b). (OSC Resp. at 3 (citing

9    dkt. # 135).) CrossCountry first cites to *Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*, 174

10   F.3d 87 (2d Cir. 1999). (*Id.* at 3 n.2.) In that case, the Second Circuit reversed Rule 11 sanctions

11   because the district court "failed to identify the specific conduct for which appellant was

12   ultimately sanctioned[.]" *Nuwesra*, 174 F.3d at 93. The written order stated only that the district

13   court would award attorney's fees and "statements from the bench . . . referred only to conduct

14   leading up to and including the filing of the complaint[.]" *Id.*at 92. Yet the district court

15   sanctioned the attorney "not . . . merely or even primarily for the complaint he filed but rather for

16   taking the case all the way to trial[.]" *Id.* at 93. Unlike here, the district court in *Nuwesra*

17   imposed sanctions for conduct that the appellant had no notice was under review.

18       CrossCountry also cites to *Thornton v. General Motors Corp.*, 136 F.3d 450, 454-55 (5th

19   Cir. 1998). In *Thornton*, not only did the district court fail to provide notice to the sanctioned

20   attorney, but the lack of notice concretely impaired his ability to respond to the allegations. *See*

21   Fed. R. Civ. P. 11(c)(1) (requiring "notice and a reasonable opportunity to respond"). The Fifth

22   Circuit reversed Rule 11 sanctions because the "district court's show cause order did not allege

23   that [the attorney] failed to make a reasonable inquiry prior to filing suit . . . the lack of which the

court's order ultimately found was [the attorney's] only omission that called for sanctions."

*Thornton*, 136 F.3d at 454. The Fifth Circuit "d[id] not believe that [the attorney] was adequately

placed on notice as to the 'specific conduct' that the court ultimately found to be sanctionable."

*Id*. "As a consequence. . ., [the attorney] was misled and hampered in presenting his defense." *Id*.

Here, however, the entire hearing at which the Court issued its Order to Show Cause

addressed CrossCountry's failure to investigate the facts concerning its own citizenship prior to

representing it to the Court in multiple filings and its continuing inability or refusal to disclose its

full citizenship. At the hearing, the Court specifically stated:

> I am going to do an order to show cause pursuant to Rule 11(c)(3), and I am going
> to give you two weeks to respond to whether or not CrossCountry and its lawyers
> violated Rule 11(b)(3), which is essentially failing to do an investigation before
> making the representation to the Court. . . . [A]nd as part of that order to show
> cause, . . . describe what the legal framework is around reluctant members to
> provide information as to their membership and how the Court is supposed to
> determine diversity jurisdiction when faced with that situation, and what
> obligations does the party have to figure out their own LLC members' citizenship.

(Hearing Transcript at 32:17-33:5.) The Court's Order to Show Cause was later memorialized in

a docket entry ordering CrossCountry "to show cause pursuant to FRCP 11(c)(3) why the Court

should not impose sanctions, including attorney's fees, for failure to comply with FRCP

11(b)(3). [CrossCountry] should address enforceability of LCR 7.1(b) when an LLC party has

upstream members who refuse to disclose their citizenship." (Dkt. # 135.) CrossCountry's failure

to investigate the facts concerning its citizenship and ongoing inability or refusal to disclose its

full citizenship is the basis for sanctions that the Court now considers.

CrossCountry does not argue it was misled or hampered in its defense, as occurred in

*Thornton*. Nor does CrossCountry suggest that the Court's Order to Show Cause was limited to

the docket entry when a fuller description of the conduct at issue was provided at the hearing.

And as illustrated by *Nuwesra*, statements from the bench may not be ignored. The Court

concludes CrossCountry was adequately placed on notice of the specific conduct that may be sanctionable.

### 3.    *Violation of Rule 11(b)(3)*

CrossCountry contends its "admissions that its members were citizens of Ohio" cannot violate Rule 11(b)(3), which applies only to "factual contentions," because citizenship is not a factual question. (OSC Resp. at 4; Fed. R. Civ. P. 11(b)(3).)

CrossCountry previously stated in its proposed counterclaim that it "is a Delaware LLC with Ohio-resident members." (Dkt. # 41, Ex. A at ¶ 4.) This factual contention was misleading if not outright false. [4] The erroneous factual contention was the basis for CrossCountry's legal contention that "[d]iversity of citizenship exists between Guild and [CrossCountry]" and thus "[t]his Court has jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction)[.]" (*Id.* at ¶¶ 5, 7.) Similarly, in its answer, CrossCountry stated it "is an Ohio citizen" and admitted Guild's allegation that CrossCountry's "members are citizens of Ohio[.]" (Def.'s Ans. at ¶¶ 7, 11; Compl. at ¶ 11.)

The Court concludes CrossCountry violated Rule 11(b)(3) because its factual contention about its members' residency failed to meet the standard that it "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for

---

[4] In its opposition to Guild's Motion for Sanctions, CrossCountry argued these statements were not false because it is indeed an Ohio citizen. (Def.'s Resp. at 9.) At oral argument, however, CrossCountry abandoned this argument:

> The Court: . . . you're basically saying, "We can mislead the Court, because we said – we were accurate in saying that we're citizens of Ohio, but we're also citizens of other states." I mean, that cannot be your argument.

> Mr. Platt: And that is not – that's not what I'm arguing, Your Honor. I would not suggest that any party can mislead a court.

(Hearing Transcript at 19:23-20:5.)

REPORT AND RECOMMENDATION - 23

further investigation or discovery[.]" Fed. R. Civ. P. 11(b)(3). There was no support for that factual contention at the time and later investigation revealed it to be false. While citizenship itself is a legal determination, there is no dispute here as to what facts underlie the determination. CrossCountry represented that its members were residents of Ohio and only Ohio.

In addition, CrossCountry continues to flout Court orders to obtain the facts from which its full citizenship could be determined. (*See* dkt. # 124; Def.'s Am. Corp. Disclos.) This makes the violation of Rule 11 an ongoing violation. The Court concludes that CrossCountry has violated Rule 11(b)(3).

### 4.    *CrossCountry's Conduct*

CrossCountry argues its behavior was not egregious enough to warrant Rule 11 sanctions. (OSC Resp. at 6-7.) CrossCountry contends "*sua sponte* sanctions 'will ordinarily be imposed only in situations that are *akin to a contempt of court*.'" (*Id.* at 6 (quoting *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1116 (9th Cir. 2001)).)

*United National* involved legal contentions under Rule 11(b)(2), which permits sanctions "only in response to claims that are not 'warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law.'" 242 F.3d at 1115 (quoting Fed. R. Civ. P. 11(b)(2)). The Ninth Circuit noted that "[t]his standard is applied with particular stringency where, as here, the sanctions are imposed on the court's own motion." *Id*. The Ninth Circuit discussed each legal contention the district court found sanctionable and concluded that, in each case, the sanctioned attorneys' arguments were nonfrivolous even though they were ultimately unsuccessful. *Id.* at 1116-18. In other words, the sanctioned attorneys' conduct did not violate Rule 11(b)(2).

Here, in contrast, the Court has concluded that CrossCountry violated Rule 11(b)(3). CrossCountry's failure to investigate its citizenship led to false factual assertions before this Court. In addition, CrossCountry continues to flout LCR 7.1(b) and Court Orders to comply with that rule to reveal its citizenship. CrossCountry not only has violated Rule 11(b)(3) by making false factual contentions, but continues to refuse to provide accurate information.

CrossCountry argues its conduct does not rise to the level of contempt, citing *Smith for J.L. v. Los Angeles Unified School Dist.*, 2018 WL 6136820, at *19 (C.D. Cal. Oct. 31, 2018). (OSC Resp. at 7.) "Apart from obstruction of judicial proceedings in open court, contempt typically 'consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply.'" *Smith*, 2018 WL 6136820 at *19 (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)).

CrossCountry argues that it has taken all reasonable steps within its power to comply with LCR 7.1(b) and the Court's Orders. CrossCountry claims that the facts underlying its own citizenship are not within its possession, custody, or control and that it cannot be held responsible for Radcliff's refusal to disclose facts concerning its citizenship. (OSC Resp. at 10-12.) With this argument, CrossCountry attempts to impose a sort of Catch-22 on the Court: Radcliff is not before the Court, and the Court cannot hold CrossCountry responsible for Radcliff's conduct. However, "contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order." *In re Dual-Deck*, 10 F.3d at 695 (quoting *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987)).

Even if CrossCountry's flouting of the Court's Order is not willful, CrossCountry may still be held responsible. The Court recognizes that Radcliff is not a party to this action, and does

not impose sanctions directly on Radcliff.[5] Nevertheless, if Radcliff chooses to obstruct CrossCountry's ability to comply with Court rules and orders, its investment in CrossCountry may be impacted when CrossCountry is sanctioned. The Court concludes sanctions against CrossCountry are proper in this case.

### 5.   *Attorney's Fees*

CrossCountry contends *sua sponte* Rule 11 sanctions cannot include attorney's fees. (OSC Resp. at 5-6.) As the Ninth Circuit has explained:

> Rule 11 provides that sanctions may include "an order to pay a penalty into court, or, *if imposed on motion* and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Fed. R. Civ. P. 11(c)(2) (emphasis added). Thus, if the present sanctions payable to [defendant] are considered to be sanctions imposed upon the court's initiative, they are unauthorized. *See* Fed. R. Civ. P. 11, Adv. Comm. Notes, 1993 Amend. ("The revision provides that a monetary sanction imposed after a court-initiated show cause order be limited to a penalty payable to the court").

*Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998). Therefore, Rule 11 sanctions imposed on the Court's own initiative cannot include attorney's fees. The Court will, however, consider other types of sanctions.

### 6.   *Nonmonetary Directives and Sanctions Payable to the Court*

Under Rule 11, sanctions imposed on a court's own initiative "may include nonmonetary directives [or] an order to pay a penalty into court[.]" Fed. R. Civ. P. 11(c)(4). In determining what sanctions are proper, the Rule 11 Advisory Committee Notes identify several considerations:

---

[5] The Court acknowledges that Guild provided authority for directly sanctioning members of an LLC "who are officially responsible for the conduct of its affairs." *Wilson v. United States*, 221 U.S. 361, 376 (1911); *see* dkt. # 140 at 3 (citing *Powell v. Collier Constr. LLC KA*, 2008 WL 11513012 (W.D. La. Dec. 4, 2008); *Luv N' Care, Ltd. v. Laurain*, 2019 WL 4279028 (D. Nev. Sept. 10, 2019)). Nevertheless, because Radcliff has not been shown to be solely responsible for conducting CrossCountry's affairs, the Court concludes the better course under these circumstances is to sanction CrossCountry directly.

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants: all of these may in a particular case be proper considerations.

Fed. R. Civ. P. 11, Adv. Comm. Notes, 1993 Amend.

Several of these factors weigh in favor of a substantial sanction. While the initial conduct of failing to investigate the facts underlying citizenship was negligent, the continued refusal to disclose citizenship is willful and ongoing. CrossCountry's conduct infected not just one pleading, but the entire proceeding, leading to a year of litigation effort largely wasted. Guild claims it has spent over two million dollars in this litigation. (Pl.'s Mot. for Sanctions at 7.) The responsible people are all attorneys. (*See* Wakefield Decl. at ¶ 1; Stone Decl. at ¶ 1.) Given the considerable financial resources of a large national company like CrossCountry, presumably a larger sanction would be needed to deter similar activity in the future.

In addition to these factors, the Advisory Committee Notes indicate that corrective action, if any, should be taken into account:

> Since show cause orders will ordinarily be issued only in situations that are akin to a contempt of court, the rule does not provide a "safe harbor" to a litigant for withdrawing a claim, defense, etc., after a show cause order has been issued on the court's own initiative. Such corrective action, however, should be taken into account in deciding what—if any—sanction to impose if, after consideration of the litigant's response, the court concludes that a violation has occurred.

Fed. R. Civ. P. 11, Adv. Comm. Notes, 1993 Amend.

The Court notes that CrossCountry has not taken, or offered to take, any corrective action. CrossCountry could have complied with LCR 7.1(b) without revealing the identity of any members of Radcliff. LCR 7.1(b) requires only a list of states in which CrossCountry is a citizen.

It does not require CrossCountry to identify any upstream members, or identify which of its members holds citizenship in which states. Nevertheless, CrossCountry continues to keep its citizenship and the underlying facts secret, preventing this Court or any other federal court from accurately determining where diversity jurisdiction is proper. The lack of corrective action weighs in favor of a more substantial sanction.

The Court will give CrossCountry one final opportunity to comply with Court rules and orders requiring disclosure of citizenship by giving CrossCountry 30 days to file a corporate disclosure statement in full compliance with LCR 7.1(b) or, in the alternative, pay $25,000 in Sanctions. In essence, the Court is providing a "safe harbor" for CrossCountry even though Rule 11 does not so require. The Court concludes that, if CrossCountry continues to flout Court orders, such conduct is akin to contempt. *See Gonzales v. Texaco Inc.*, 344 F. App'x 304, 308 (9th Cir. 2009) ("prior to imposing court-initiated sanctions, the district court is required to determine whether counsel's conduct is 'akin to contempt.'") (quoting *United Nat'l Ins. Co.*, 242 F.3d at 1116).

Because the Court anticipates objections to this Report and Recommendation, the Court will hold this sanction in abeyance unless and until the Report and Recommendation is adopted.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Guild's request for judicial notice (dkt. # 120) and CrossCountry's request for judicial notice (dkt. # 131). The Court GRANTS in part CrossCountry's Motion to Seal (dkt. # 107). Exhibits H, I, and J to the Motion to Seal (dkt. ## 107-2, 107-3, 107-4) shall be maintained under seal. The Court recommends CrossCountry's Motion to Dismiss (dkt. # 108) be GRANTED. The Court DENIES Guild's Motion for Sanctions (dkt. # 117). The Court ORDERS CrossCountry to comply in full with LCR 7.1(b) or pay

$25,000 in Sanctions within 30 days of the date this Report and Recommendation is adopted. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **December 23, 2022**.

The Clerk is directed to send copies of this order to the parties and to the Honorable John C. Coughenour.

Dated this 6th day of December, 2022.

MICHELLE L. PETERSON
United States Magistrate Judge